BAER et al. v. AMERICAN CREDIT INDEMNITY CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 7, 1906.)

1. INSURANCE — CREDIT INSURANCE — BREACH OF WARRANTY — ESTOPPEL— KNOWLEDGE OF SOLICITING AGENT.

An application for a bond of credit insurance recited that it was a part of the contract, and that it was made by the applicant or his own agent. In fact, it was prepared by the company's soliciting agent, who was without power to issue bonds, and whose name did not appear on the bond. The questions in the application were not technical, and insured was not obliged to let the solicitor fill up the application. *Held*, that the agent's knowledge of an inaccurate statement in the application as to past business losses on which the terms of the bond were based could not be imputed to the company so as to base a claim of estoppel thereon.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 968.]

2. SAME—ESTOPPEL BY ADJUSTMENT—WAIVER OF BREACH.

An unaccepted tentative offer by an adjuster of a credit insurance company to settle the claim if insured would accept less for cash, made in ignorance of a material breach of warranty, is not a waiver thereof.

McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Max Baer and another against the American Credit Indemnity Company of New York. From a judgment in favor of defendant and a denial of a motion for a new trial, plaintiffs appeal. Affirmed.

Argued before McLAUGHLIN, INGRAHAM, CLARKE, HOUGHTON, and SCOTT, JJ.

House, Grossman & Vorhaus (Chas. Goldzier and Louis J. Vorhaus, of counsel), for appellants.

Mesmore Kendall (William N. Cohen, of counsel), for respondent.

CLARKE, J. This action was brought upon a bond of indemnity issued by the defendant intended to insure the plaintiffs, who were merchants, against losses resulting from insolvency of their debtors between the 28th day of August, 1901, and the 15th day of October, 1902. The complaint alleges the issuance of such bond in consideration of a premium of $300, and that during the period for which they were insured plaintiffs suffered a loss which was adjusted at the sum of $5,-219.36, from which the defendant is entitled to a deduction of $500, the terms of the policy providing that the insured should bear an initial loss of $500 and the company be responsible only for losses above said amount, and asked judgment for the balance of $4,719.36. The answer admits the issuance of the bond, and sets up as a separate defense that by the written application for the bond, signed by the plaintiffs, they warranted certain statements to be true, and that said statements

were, in fact, false and untrue, and were known by the plaintiffs at the time they were made and at the time the said bond was delivered to be untrue, and that the defendant was induced and did actually make and deliver the bond of indemnity to the plaintiffs by reason of the said warranties contained in the written application for the bond, relying upon the truth of such warranties, and was thereby induced to fix and determine in the bond the amount of loss first to be borne by the plaintiffs upon the total alleged sales. One Kraemer was employed by the defendant as an agent to solicit customers for credit indemnity insurance. It appears in evidence that the premium charged in the bond and the amount of the initial loss to be first borne by the insured before any obligation for the payment of losses rested upon the company was predicated upon the statement of the insured of the amount of his sales and the amount of his losses for each of the five years prior to the giving of the bond. It appears that the plaintiffs were fully aware of this, and that in numerous conversations which preceded the issuance of the bond they were negotiating with the soliciting agent Kraemer as to the amount of the initial loss; that every time they negotiated Kraemer wanted the initial loss larger and plaintiff wanted it smaller, and then Kraemer would go back to the company to find out if it would be made any smaller before he could tell whether it would be done or not; that in this way, by repeated negotiations, the amount of the initial loss which had first been put by the company at $1,000 was finally fixed at $500. One of the plaintiffs testified that he told Kraemer that the gross sales for 1900 were $321,000, but that, although Kraemer asked him, he could not tell him the sales for any year prior thereto, and that Kraemer then said he would average them up, and that he did average them up in his own handwriting on the application; that, as to the losses, plaintiff told Kraemer that the losses for the entire five years were $2,500; that they had $1,400 loss for the year 1900 and $1,100 previous to that, but they could not tell the precise amounts in the different years, and that Kraemer said that he would average those losses for the five years, and that he did it and entered them upon the application. This plaintiff further testified that he read over the application which had been filled up by Kraemer as to the amounts, that he knew the contents thereof, and, although he knew that the statements of each item appearing upon the application, both as to the amount of the yearly business and as to the amount of the yearly loss, were not true, that nevertheless he signed it.

It was also proven upon the trial, by examination made by an officer of the defendant from the books, made after the presentation of the claim, what the precise amounts for such years really were, as follows: Sales for the year 1896, $122,831.73; 1897, $202,211.12; 1898, $261,103.27; 1899, $321,094.60; 1900, $321,023.64; and that the losses for the year 1900 were $1,464.75 and for four years previous thereto, $1,115.81.

The application upon which the bond was issued, and in which the answers were written by Kraemer and signed by the plaintiffs, contained, among other things, the following:

"This application is to be considered as in part consideration of the bond to be issued. * * * We make answers to the following questions, and we warrant the said answers to be true, and they are offered as a consideration for the bond hereby applied for and any bond which may hereafter be issued to us * * *. A. What have been your gross sales and losses each year during the past five years?

| Amount of Gross Sales. | Amount Gross Losses. |
|---|---|
| 1896—$300,000 | $278.30 |
| 1897— 300,000 | 427.13 |
| 1898— 300,000 | 579.81 |
| 1899— 350,000 | 519.22 |
| 1900— 350,000 | 750.00 |

"[There may be a salvage from 5 to 10 per cent. of these losses.]

"This application and the bond to be issued constitute the entire agreement between the undersigned and the American Credit Indemnity Company of New York, any verbal or written promise or agreement by any agent of the said company to the contrary notwithstanding. It is also agreed and warranted that this application, whether as respects anything contained therein or omitted therefrom, has been made, prepared and written by the applicant, or by his own proper agent."

The bond issued upon said application was under seal, and contained the following clause:

"Misrepresentation, concealment or fraud in obtaining this bond or in the proof or adjustment of any claim for loss thereunder, shall void it from the date of its issuance, and the premium paid shall be forfeited. No person shall at any time have power to alter or change the terms of this bond or any provisions thereof, nor shall notice to any person or knowledge of his either before or after the execution of this bond be held to effect a waiver or change this bond or any provision thereof. Alterations, changes and waivers of the provisions of this bond shall only be valid when authorized by this company in writing over the signature of its president or secretary."

And the application by the terms of the bond was made a part thereof.

It appearing that the figures stated in the written application were not true statements of the business operations of the plaintiffs for the preceding five years to the knowledge of the plaintiffs when they signed the application upon which the bond of indemnity was issued, the court directed a verdict for the defendant. It is not contended upon this appeal that the statements warranted in said application to be true were, as matter of fact, true. The claim of the appellant is that as Kraemer, the soliciting agent, knew that they were not true, and, as Kraemer wrote the various amounts in the application after averaging them himself, that the knowledge of Kraemer was the knowledge of the defendant, and that, inasmuch as with that knowledge the premium was accepted and the bond issued, the defendant is estopped from denying liability thereon.

The contention of the respondent is that Kraemer was not a general agent of the company; that therefore his knowledge could not be imputed to the company; that it clearly appears that the plaintiffs knew Kraemer was a mere soliciting agent from the fact that, during the continuance of the negotiations, he would have to report back to the company from time to time before the amount of the initial loss was fixed; that therefore, in the making of this application, Kraemer was not the agent of the company, but the agent of the insured; and that by

their specific warranty as to the truthfulness of the statements made in their application plaintiffs are estopped from denying their responsibility for those statements, and, as they are concededly false, the bond is void and the direction of a verdict for the defendant was required.

The question of the relationship that an agent bears to the insurer and to the insured has been many times considered by the courts. I take it that whether or not the knowledge of the agent is to be imputed to the company, or whether or not the agent is to be considered for certain purposes the agent of the insured, depends upon the nature of the agency and the character of the contract. In Sternaman v. Metropolitan Life Insurance Company, 170 N. Y. 13, 62 N. E. 763, 57 L. R. A. 318, 88 Am. St. Rep. 625, the Court of Appeals has finally determined, so far as life insurance companies are concerned, that where the insured is obliged to submit to an examination by the medical officer chosen by the company, and where that medical officer is required to put down in his own handwriting the answers to specific medical inquiries addressed to the insured, "the medical examiner is the agent of the insurer in making the examination, taking down the answers and reporting them to the company; that his knowledge, thus acquired, his interpretation of the answers given, and his errors in recording them, are the knowledge, interpretation, and errors of the company itself, which is estopped from taking advantage of what it thus knew and what it had thus done when it issued the policy and accepted the premium." But in that same opinion it was said:

"The parties to the policy in question could agree that the person who filled out part A of the application was the agent of the insured and not of the company. There is a difference in the nature of the work of filling out the blank to be signed by the insured and that of filling out the blank furnished for the use of the medical examiner. The former is the work of the insured, and may be done as well by one person as by another. He may do it himself or appoint an agent to do it for him. It is quite different, however, with the work of the medical examiner, because that requires professional skill and experience, and the insurer permits it to be done only by its own appointee."

There is nothing in this bond nor in the application which provides that the application should be made out by the officer of the company, nor did the questions therein contained require any technical knowledge or experience. They are of the simplest character, purely as to matters of fact. They are:

"How long have you been in business? What line? Jobbers or manufacturers? What territory do you cover? In what sections do you make the largest aggregate sales? What are your longest terms of sale? Do you sell mostly to manufacturers, jobbers, or dealers? Is any fact now known to you or has any information come to your knowledge which injuriously affects the credit or standing of any person, firm, or corporation now indebted to you or to whom you now contemplate selling goods? What have been your gross sales and gross losses each year during the past five years?"

There is no similarity whatever between these questions and those propounded by the medical examiner, and this application comes, it seems to me, distinctly within the quotation from the Sternaman Case, supra:

"The parties to the policy could agree that the person who filled out part A of the application was the agent of the insured and not of the company."

And that is precisely what the insured did in these words:

"It is also agreed and warranted that this application, whether as respects anything contained therein or omitted therefrom has been made, prepared and written by the applicant or by his own proper agent."

The insured knew the facts. He read what the agent had written down. He signed the paper with his knowledge, warranting the said answers to be true and warranting that they were prepared by his own agent. As I read the Sternaman Case, this he could do, and, if he did it, must be held to be bound thereby.

The appellant contends that Lewis v. Guardian Fire & Life Assurance Company, 181 N. Y. 392, 74 N. E. 224, 106 Am. St. Rep. 557, is a direct authority in point. In that case a fire insurance company defended upon the ground of a breach of the conditions of the policy that other insurance had been effected on the property, previous to the issuance of the policy, which additional insurance was not noted or indorsed thereon. There seems to have been no question in that case of an application containing false statements warranted to be true by the applicant over his own signature and with knowledge thereof. The question decided was "that, if the insurance company or its general agent is at the time of the issue of the policy notified of the facts which under the terms of the policy would render it void if not noted on the policy, the company cannot avail itself of such a defense, though a different rule prevails as to breaches of conditions occurring subsequent to the issue of the policy," and the decision went upon the specific ground that it appeared upon the face of the papers that the agent to whom the application was made and who delivered the policy was the general agent of the company; the name "Patterson & Son, Agents," appearing upon the policy in two different places and having been put thereon, not by the agents, but by the officers of the company in its office. That case is therefore an authority only for the proposition that the knowledge of a general agent of an insurance company, whose general agency is conceded or established, is the knowledge of the company. There is no such evidence in the case at bar. Kraemer is conceded to be a soliciting agent. His name does not appear upon the indemnity bond sued on. It does appear on the application in writing, opposite the name of the applicant, as of a witness thereto, and all of the evidence tends to show that he did not possess the powers of a general agent, because after every interview, while negotiations were going on with the insured, the insured testified that he had to go back to the company before he could give an answer.

In the case of Butler v. Michigan Mutual Life Insurance Company, 184 N. Y. 337, 77 N. E. 398, the question was whether the knowledge of a soliciting agent of the defendant of the true facts concerning the health of the insured disclosed to said soliciting agent before the insured went to the medical examiner for examination, was the knowledge of the company, and the court held that it was not, stating:

"Had Freeman been authorized to fix insurance and issue policies, a very different question would be presented."

There is no evidence in this case that Kraemer had any right to fix insurance or to issue the policy. On the contrary, it appears affirma-

tively that the company reserved the entire right of decision upon the terms of the policy, and that Kraemer does not come within the rule as to a general agent, and therefore his knowledge cannot be imputed to the company. I find, therefore, in the three latest cases of the Court of Appeals bearing upon this subject nothing to destroy the power to contract between the plaintiffs and the defendant, and it seems to me, therefore, under the circumstances of this case, that the warranty deliberately made should be given its full force and effect. There was no difficulty in the plaintiffs obtaining the information as to their exact sales during the five preceding years. They claimed that the reason for that statement was that, as they kept their books by single entry, it could not be ascertained, but the examiner of the company, when making an examination to adjust its loss upon those same books and within a very few hours, ascertained to the fraction of a cent the precise amount of the sales for each of said years, and those figures show that, instead of $300,000 worth of sales in the year 1896 as warranted by the plaintiffs, the actual sales were $122,831.73, and so of the other years. Even for the year 1900, for which year the plaintiffs admit that at the time of agreement they did know the correct amount of sales to be $321,023.64, they certified over their own signature the amount to be $350,000. Of course, under this scheme of insuring credits, the greater the past sales and the smaller the past losses the less the premium and the less the amount of the initial loss to be borne by the insured. Therefore these were material facts and the breach of warranty was not unimportant or technical. I find no reason in the facts of this case and no controlling decision which relieve the plaintiffs from the effect of their written contract of warranty.

Appellant makes the further point that the defendant, having adjusted the plaintiffs' claim with knowledge of the alleged breach of warranty, must be deemed to have waived the same. The facts in this regard are as follows: After the plaintiffs forwarded their claim to the defendant one of the plaintiffs testified that Brown, the adjuster of the company, called upon them and said, "I came here to adjust your claim," and that thereupon with two bookkeepers went over the books, working during the morning and afternoon until about half past 4, at which time, Brown said to the plaintiffs:

"We owe you about four thousand six hundred and odd dollars. What are you willing to take for cash? As a rule, if we make a settlement and they want to pay cash, we will throw off a little something."

Witness said:

"I will not throw off one cent. I want four thousand six hundred odd dollars, whatever is the amount stated. When do you expect to send me the amount?"

Brown said:

"We have 60 days' time to settle, to pay the amount, and I said, 'All right; I can wait.'"

The work upon the books upon that first day was confined entirely to the examination as to the losses for which the plaintiffs were claiming indemnity under their bond. Upon the next day the examiner re-

turned and continued to examine the books for the purpose of ascertaining the sales for the previous years, and, having made that examination, discovered the facts as to the breach of warranty hereinbefore set forth. It is perfectly clear that the rule contended for and the cases cited do not apply. There was no adjustment with knowledge of the facts, and there was no account stated. The examination of the books was still proceeding. Immediately upon the discovery by the examiner of the facts as disclosed by the books for the previous years, the claim was rejected by the company. As we have seen, the knowledge of the soliciting agent is not to be imputed to the company. The information obtained by Brown, the examiner, is to be imputed to the company, and, if thereafter with the possession of those facts the loss had been adjusted, then a position might have been presented which would have called for the application of the rule contended for. This is not that case.

It follows, therefore, that the judgment and order should be affirmed, with costs. All concur, except McLAUGHLIN, J., who dissents.

McLAUGHLIN, J. (dissenting). I think the court erred in directing a verdict for the defendant. A question of fact was presented, which should have been submitted to the jury, as to the authority of the defendant's agent, Kraemer, to waive the conditions of the policy, and also as to whether he did not, in fact, waive the conditions which it is claimed constitute a forfeiture. Lewis v. Guardian Fire Insurance Co., 181 N. Y. 392, 74 N. E. 224, 106 Am. St. Rep. 557.