## TRAVELERS' INS. CO. v. THORNE.

### (Circuit Court of Appeals, First Circuit. May 27, 1910.)

### No. 860.

1. INSURANCE (§ 96*)—BROKERS—AGENCY FOR INSURED—BREACH OF WARRANTY.

Plaintiff was born without fingers on his right hand, and testified that his right eye had become inflamed through a cold caught while a boy; that the eye was still disfigured; and that its removal had been suggested by a surgeon, though he did not notice any impairment of sight. B., an insurance agent, not employed by defendant, applied to plaintiff to take out insurance, which he agreed to do. B. applied to his own company, but the application was refused. He then went to defendant's office and presented an application for the policy in question, in which B. answered the question as to whether plaintiff had ever been refused, with the words, "not to my knowledge," plaintiff not having been informed of the refusal by B.'s company. B. also answered in the affirmative a statement that plaintiff was in sound condition mentally and physically, that his hearing and vision was not impaired, and that he was not suffering from any mental or bodily infirmity or deformity; the application being signed: "I personally solicit and recommend this risk," B., "Broker, Solicitor, Agent or Subagent." The policy was made out, delivered to B., who collected the premiums from plaintiff, paid the same to defendant's agent, by whom B. was paid his commissions. The policy provided that all the warranties made by insured on acceptance of the policy were true. *Held*, that B. was the agent of plaintiff, and not of the insurance company, and that the latter was therefore not estopped to assert B.'s misstatements as constituting breaches of warranty in defense to an action on the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 126; Dec. Dig. § 96.*]

2. COURTS (§ 365*)—FEDERAL COURTS—RULES OF DECISION—STATE DECISION.

Where two insurance contracts were obtained at the same time through the same agent through misrepresentations on his part, the fact that

after a liability had accrued on both policies the state Supreme Court in an action on one policy decided that the agent was the agent of the insurer, and therefore precluded the latter from relying on such misrepresentations as constituting breaches of warranty and defenses, did not require the federal court in a suit brought on the other policy to follow the state decision as a rule of law established in that state at the time of the contract; the federal court being authorized to form an independent judgment on such question as a matter of general law.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 950; Dec. Dig. § 365.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

In Error to the Circuit Court of the United States for the District of Maine.

Action by Fred S. Thorne against the Travelers' Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Harvey D. Eaton, for plaintiff in error.

George W. Heselton, for defendant in error.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

LOWELL, Circuit Judge. This was an action at law to recover on two policies of accident insurance. Each insured the plaintiff, "provided * * * (9) that all of the warranties following made by the insured upon acceptance of this policy are true." The defense was a breach of the following warranties contained in the policy:

"L. No application ever made by me for health or accident insurance has been declined. * * * M. * * * I am in sound condition mentally and physically; my hearing or vision is not impaired; I have never had nor am I now suffering from or subject to fits, disorders of the brain, or any bodily or mental infirmity or deformity. * * *"

The policy was issued under the following circumstances: Burns, the duly appointed agent of the New York Life Insurance Company and of the Employers' Liability Insurance Company, called on the plaintiff and urged him to take out some insurance with Burns. Thorne told Burns that he would take $10,000 insurance with the latter, $5,000 combination life and health insurance and $5,000 accident insurance. From an old insurance policy which was handed him by the plaintiff's clerk Burns testified that he got the "date of his (Thorne's) birth, the occupation, and the data that was necessary to file the application." He then filled out an application blank and obtained $5,000 insurance in the Casualty Company. He was asked why he did not get the above-mentioned insurance from his own company rather than from the Casualty Company, and answered, "I didn't want it." But he went thereupon to his own company, the Employers', and apparently to an agent of a rank higher than his own, and presented an application for the rest of the $10,000. This application was refused. He then went to the defendant's office and presented an application in part as follows:

---

(Printed) "No application ever made by me for life, health or accident insurance has been declined; no life, health or accident policy ever issued to me has been canceled; nor has any renewal thereof been refused by this or any other company or association—except as herein stated." (In Burns' writing) "Not to my knowledge." (Printed) "My habits of life are correct and temperate. I am in sound condition mentally and physically. My hearing or vision is not impaired. I have never had nor am I now suffering from or subject to fits, disorders of the brain, or any bodily or mental infirmity or deformity—except as herein stated." (In Burns' writing) "Yes."

It was not disputed that the answer last mentioned was intended to deny the plaintiff's infirmity and deformity. The application was signed:

"I personally solicit and recommend this risk. T. S. Burns, Broker, Solicitor, Agent or Subagent."

Thereupon the policies were made out and handed to Burns. The plaintiff appears to have approved the increased insurance. He sent a check for the premiums to Burns, who indorsed it to the defendant's agent. The agent paid Burns his commission, and Burns delivered the policies to the plaintiff.

The plaintiff thereafter had an accident to his eye within the terms of the policies, and the defendant refused to pay the sum insured because of the plaintiff's infirmity or deformity. The other defense of former refusal of application was not raised in the defendant's original letter, perhaps because the fact was then unknown.

The plaintiff was about 50 years old when the policy was issued. He was born without fingers on his right hand. He testified that his right eye had become inflamed through a cold caught while swimming as a boy; that the eye was still disfigured by a swelling; that its removal had been suggested by "a very eminent surgeon," but that he did not notice any impairment of sight. Burns testified that he had "noticed it wasn't a perfect hand," and that "there was an imperfection on the lower side of one of the eyes—a small projection."

Sundry instructions were asked and rulings were made in the course of the trial to which the defendant excepted. The jury returned a verdict for the plaintiff. The defendant sued out this writ of error. In deciding the case we find ourselves obliged to consider one proposition which makes an answer to all other questions unnecessary: Should the learned judge upon the evidence have directed a verdict for the defendant? If he should have done so, all other rulings and all admissions and exclusions of evidence become immaterial.

The plaintiff was deformed in his right hand. In the language of the applications and of the policies he was "suffering from bodily deformity." It is hard to believe that he was not suffering also from impaired vision and deformity of the eye. If, however, his testimony be taken to mean that his vision was wholly unimpaired, that may have been a question for the jury, and we will refer to it no further. An application for insurance made by the plaintiff through Burns had been refused before the policy sued on was applied for, and on the same day.

. Two statements of the application were therefore false. Two warranties of the policy were broken. The plaintiff testified that he knew nothing about the applications, and did not examine the policies. The defendant did not dispute the plaintiff's personal good faith. At the argument before us the plaintiff hardly denied the breaches of warranty, but chiefly argued that the defendant had waived the breach through the knowledge and conduct of its agent Burns. In support of his argument the plaintiff relied upon the decision of the Supreme Court of Maine in Thorne v. Casualty Company, 76 Atl. 1106, decided and reported in a suit brought by this plaintiff for the accident here in suit on the policy of the Casualty Company above mentioned. The Casualty Company in that suit raised the defense of deformity, though not that of former refusal of application. The Maine court sustained a verdict for the plaintiff, and said:

"The reply of the plaintiff is 'that the company is estopped as regards this special matter of defense because of agent's knowledge.' The question then is: Should the knowledge of Burns in procuring this policy be regarded as that of the defendant? We think it should under the doctrine of estoppel. Rev. St. c. 49, § 93, provides as follows: 'All notices and processes which, under any law, by-law or provision of the policy, any person has occasion to give or serve on any such company, may be given to or served on its agent, or on the commissioner, as provided in the preceding section, with like effect if given or served on the principal. Such agents and the agents of all domestic companies shall be regarded as in the place of the company in all respects regarding any insurance effected by them. The company is bound by their knowledge of the risk and of all matters connected therewith. Omissions and misdescriptions known to an agent shall be regarded as known to the company, and waived by it as if noted in the policy.' * * * The defendant's home office was in New York City. Its representative in this state was the corporation, Macomber, Farr & Whitten. Through this corporation it transacted its business and dealt with all its policy holders in Maine. This corporation appears to have been more than a general agent. It had authority to issue policies direct from its office and did so issue the policy in question. The same day that the application was taken to this office, the policy, signed in blank by the officers of the home company, was written and countersigned by its representative in this state, delivered to Mr. Burns and by him delivered to the plaintiff. This policy could not have gone to New York and returned the same day. They were not only to be regarded under the statute 'as in the place of the company in all respects,' but were as a matter of fact subrogated to the authority of the company to issue policies, at least, to issue this policy to the plaintiff. Had they sent one of their office force to Mr. Thorne, and had he done precisely what Mr. Burns did, and knew precisely what Mr. Burns knew with respect to the applicant, could it be possible that the defendant company could repudiate the acts and knowledge of this office employé on the ground that he was not an agent? If so, the statute intended for the protection of the assured becomes a deception and an open door to the commission of fraud. The defendant could receive all the benefits of premiums without the assumption of any of the risks of insurance. But what is the distinction between the sending out an office employé to solicit this policy, and ratifying the acts of Mr. Burns, who had solicited it? Mr. Thorne had no knowledge of the company in which he was to be insured. His application was made out by Mr. Burns, who had full knowledge of the risk. Mr. Burns took the application away and returned with a policy duly issued by the defendant company for which he paid the required premium. By delivering the policy to Mr. Burns to be by him delivered to the plaintiff, Macomber, Farr & Whitten by that act made Mr. Burns their agent. But, when they made him their agent, they were presumed to have knowledge that whatever Mr. Burns knew of the physical defects of the assured they would be charged with knowing. The statute will not permit an authorized agent to escape responsibility by using dum-

mies. The Macomber, Farr & Whitten Company were therefore put upon their inquiry as to whether Mr. Burns was cognizant of any physical defects, knowledge of which might be regarded as a waiver of any warranty. Not having made inquiry, which it may be presumed would have revealed Burns' knowledge, they must now be estopped from asserting that they did not know of the defects of which Burns knew. Therefore Mr. Burns' knowledge became their knowledge, and their knowledge, under the statute, became that of the defendant company. We think the logical deduction from the facts is that the defendant company should under the statute be made chargeable with knowledge of the physical defects of the assured, and held to have waived so much of the warranty in the application as related to them."

With the most unfeigned respect for the learned state court, we are unable to follow its reasoning or to reach its conclusion. It held that Burns was the defendant's agent in the purchase and issuance of the policy. Upon this proposition hangs all the court's reasoning. We can find no evidence that Burns was the defendant's agent. His manual delivery of the policies to the plaintiff appears to us to have been an act done by him as the plaintiff's broker. He was employed by the plaintiff to get the insurance. His discretion to choose the company did not weaken his agency. In the applications he spoke in the plaintiff's name. The qualification of his signature as "Broker," etc., was only to comply with Rev. St. Me. c. 49, § 96, and need not be discussed further. To us it seems that the defendant did not ratify the acts of Burns. We do not think that a contractor, in ignorance thereof, ratifies or condones false statements of the contractee's agent upon which the contract is based merely by delivering to that agent the instrument of the contract that he may hand it to his principal; and we do not think that the contractee's agent is made the agent of the contractor merely because the money paid to the latter passes to him through the agent's hands. We think that the payment of the commission by the defendant to Burns according to the common usage did not affect the matter. The false statements of the application upon which are based the warranties of the policy are expressed as the representations of the plaintiff. If, in making them, Burns was acting as the defendant's agent, they would be valueless to the defendant and altogether meaningless. Let us suppose that A. employs B., a real estate broker, to hire a cottage for him at the seaside for three months. B. obtains, by false representations, a written agreement for a lease from C. embodying the representations as the warranties of A. B. hands the agreement to A. having received the rent from A. and paid it to C., and having received his commission from C. Can C. be held upon the agreement under these circumstances, on the theory that B's. knowledge of the falsity of the representations is his knowledge, and that through B.'s agency he has waived the conditions which he inserted for his own protection? We think not, and we think the case put is analogous to the case at bar. Burns was the agent of Thorne, not the agent of the insurance company.

After examining the earlier cases decided by the Supreme Court of Maine, we are unable to find in them support for the proposition above quoted, that "by delivering the policy to Mr. Burns to be by him delivered to the plaintiff (the defendant) by that act made Mr. Burns, their agent."

The question presented to us is not that of the construction of a Maine statute, but of the effect of the act of an insurance company in dealing in the usual manner with an applicant's insurance broker. There is strength in the argument that this effect is a matter of general law concerning which the federal courts should reach an independent decision. But, even if this be not true, yet we have not here to deal with a class of decisions or a rule of law established in Maine at the time the contract was entered into. The Casualty Company's case arose out of the same circumstances as did the case at bar. With all disposition to lean toward agreement with the state court we find ourselves unable to agree. That we are not compelled to follow its decision appears to us settled by Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 Sup. Ct. 140, 54 L. Ed. —— where the decision of the state court dealt with that which was more nearly a matter of local law than does the Maine case cited.

The judgment of the Circuit Court is reversed, the verdict is set aside, the case is remanded to that court for further proceedings not inconsistent with this opinion, and the appellant recovers its costs of appeal.