ÆTNA INS. CO. v. HOUSTON OIL & TRANSPORT CO.
No. 5812.

Circuit Court of Appeals, Fifth Circuit.
April 21, 1931.

J. Newton Rayzor, of Houston, Tex. (Royston & Rayzor, of Houston, Tex., on the brief), for appellant.

Carl G. Stearns, of Houston, Tex. (Fulbright, Crooker & Freeman, of Houston, Tex., on the brief), for appellee.

Before BRYAN and FOSTER, Circuit Judges, and DAWKINS, District Judge.

FOSTER, Circuit Judge.

Appellee, the Houston Oil & Transport Company, filed a libel in admiralty to recover on an insurance policy issued by appellant, the Ætna Insurance Company, covering the loss of the tug Minnie R. by fire to the amount of $7,500. The suit was brought on behalf of appellee, the Peden Iron & Steel Company, and the Guaranty Trust Company, mortgagees, named as payees in the policy of insurance, and on behalf of the City Bank & Trust Company, successor to the Guaranty Trust Company. A decree was entered in favor of appellee for the full value of the policy with interest. This appeal followed.

There is no material dispute as to the facts. The policy No. 61,660, on the A. I. A. inland form, was issued to the Houston Oil & Transport Company, with a clause stating simply, "On account of whom it may concern, loss, if any, payable to Peden Iron and Steel Co. and Guaranty Trust Co. or order." Of itself the policy covered any loss of the vessel from fire and the perils of harbors and other waters within the limits of navigation permitted, within one year from February 14, 1928. The policy contained a clause which, so far as material, was as follows: "Warranted by the assured that the said vessel shall at all times during the continuance of this policy * * * shall at all times have a competent watchman on board, except that when the vessel is laid up and out of commission she shall be in charge of a competent watchman."

And another clause, as follows: "It is understood and agreed that no custom, usage or waiver of any kind shall affect, control or void any warranty or condition of this policy, unless these insurers shall signify their consent thereto by endorsement hereon in writing."

Also, written into the policy was this clause: "Notwithstanding anything herein contained to the contrary, this insurance war-

ranted covering the risk of fire only, as per form attached."

In conformity to the last-quoted clause, attached to the policy was a rider, rather complete in itself, limiting the policy to loss by fire only and limiting the vessel to the use and navigation of Texas Gulf coastwise waters and all inland tributaries thereto. Another rider was also attached which contained clauses permitting ten gallons of gasoline to be on board, permitting the charter of the vessel, and extending the policy to cover the expense of removal to a port of repair, in the event of damage by fire, and also containing the following printed clause: "All clauses and conditions in this policy to which this form is attached at variance with or in conflict with the above are hereby waived and declared void." Both riders contained the statement "attached to and made part of policy No. 61,660 of the Aetna Insurance Company."

A condition of the policy was that no petroleum or petroleum products or any explosive could be carried as cargo unless by special agreement in writing. Nothing was said in the policy relative to the right of the owner to charter the vessel.

In July, 1928, the tug was laid up in Irish Bend, 18 miles from the city of Houston, at a point about 500 feet from the Houston ship channel. Two barges and a launch belonging to appellee were also laid up at the same place. The tug was totally destroyed by fire which started on the morning of September 23, 1928, some time between 4 and 6 o'clock. On the day before the fire, Mr. Kelly, the president of the Houston Oil & Transport Company, visited the vessel. She had a watchman, who may be considered competent, on board, but he was granted permission by Kelly to absent himself and go to Houston to procure supplies and clothing. He left with Kelly about 4 o'clock in the afternoon of September 22 and did not return until 8 o'clock the following morning, by which time the tug had been entirely destroyed. Kelly understood that the watchman would return not later than 1 or 2 o'clock in the morning but did not give him any orders as to the time of returning. Testimony was offered to show that it was the general custom in the port of Houston for watchmen of laid-up vessels to absent themselves for the purpose of getting necessary supplies and clothing. The proof falls short of showing any such general custom of the port. The place where the tug was laid up was isolated with no telephone handy, no houses near by, and no one was in the vicinity when the fire occurred. The tug had several fire extinguishers, more than the usual number, in good order, on board, and the watchman habitually slept on her when he was there.

Appellant defended on the ground that the watchman warranty of the policy had been breached. Appellee denied any breach of the warranty and raised the points that the riders attached to the policy contained the whole contract and the watchman clause was not effective; that as the loss was payable to mortgagees, recovery could not be effected by any act of the owner; that the breach of warranty was waived by retention of the premium until after suit. The District Court, as appears by an opinion in the record, while discussing the questions raised, did not find it necessary to decide any of them except as to the breach of warranty. As to that he held that the warranty had not been breached.

It is well settled that an insurance contract may consist of several separate documents and if possible they must be construed together. But a clause written in, an indorsement, or a rider inconsistent with the provisions of the printed policy must prevail. And if any part of the contract is ambiguous, it must be construed strongly against the insurer. However, a contract of marine insurance must be interpreted in the light of practical, sound common sense. Peters v. Warren Ins. Co., 14 Pet. 99, 10 L. Ed. 371.

It is evident that in this case the policy and the two riders must be construed together to form one contract. The policy issued before the vessel was laid up, but, as a time policy, it was intended to cover the vessel whether laid up or in commission. The watchman warranty was very material to the risk. In fact, the presence of a watchman would be more likely to prevent loss by fire when the vessel was laid up than loss from perils of the waters or fire when the vessel was in commission and manned by a full crew. It is inconceivable that an insurer would enter into a contract waiving this essential provision. Certainly that conclusion could not be reached unless clearly shown by endorsement on the policy in some way. The riders do not expressly waive this warranty and there is nothing in them inconsistent therewith. It may be said that this was the practical construction given the policy by appellee by employing a watchman.

Appellee relies upon the case of New York & P. R. S. S. Co. v. Ætna Ins. Co. (C.

C. A.) 204 F. 255, to sustain the contention that the rider formed the whole contract and superseded the terms of the policy, including the watchman clause. That case is not in point, as it appears that the rider contained a clause substituting its terms and conditions for those of the policy and providing that the latter were thereby waived. The same may be said of other cases cited on this point. No such condition appears in the riders involved in this case. We need not review the other decisions cited by appellee. Policies of marine insurance are governed by the general admiralty law. In construing them we prefer to follow the decisions of the federal courts and other admiralty courts and to put aside decisions of state courts where they are in conflict. We conclude that the watchman clause was not waived and was in full force when the, fire occurred. Shamrock Towing Co. v. American Ins. Co. (C. C. A.) 9 F.(2d) 57; Ætna Ins. Co. v. Sacramento Stockton S. S. Co. (C. C. A.) 273 F. 55.

▮▮▮▮ Federal courts look to the laws of England for guidance in matters of marine insurance and follow them unless, as a matter of policy, a different rule has been adopted. Queen Ins. Co. v. Globe Ins. Co., 263 U. S. 487, 44 S. Ct. 175, 68 L. Ed. 402. With regard to express warranties there is no difference that we are aware of. The watchman clause in this case was an express warranty. The English rule is that express warranties are to be literally complied with. Arnould on Marine Insurance (11th Ed.) § 630. The federal courts have generally adopted this rule. In perhaps the first reported American decision, Ogden v. Ash, 1 Dall. 162, 1 L. Ed. 82, it was held that a warranty of this kind must be strictly complied with, and in Shamrock Towing Co. v. American Ins. Co., supra, a case dealing with the watchman warranty, the rule of literal compliance was adopted and applied. With this ruling we agree.

▮▮▮▮ This requires the consideration of whether the warranty was breached in this case. Under the warranty the insured was obligated to employ a competent watchman and to keep him in charge of the vessel at all times within the life of the policy. It was not necessary that the watchman should be actually on board the vessel. However, within the meaning of the policy, the term "watchman" clearly implies one who is in a position to see and that he should be in close proximity to the vessel in his charge at all times in order, if possible, to prevent her destruction

by the peril insured against. It may be conceded, for the purpose of argument, that if a watchman was employed and was habitually in the immediate vicinity of the vessel, an absence for a short period for a good reason would not necessarily constitute a breach of the warranty, but this conclusion would depend upon the facts of the particular case. It would not be a compliance with the warranty to employ a watchman and then immediately withdraw him, thereby leaving the property unguarded, nor to permit him to so locate himself that the property would not be under his observation at all. Absence for from 9 to 16 hours with permission of the insured amounts to a withdrawal of the watchman. It would have been easy for appellee to have arranged to send the watchman his necessary supplies and clothing or to have provided a substitute during his absence. In this case it is reasonable to presume that had the watchman been at his post he would have discovered the fire in time to extinguish it with the means at hand before any considerable damage had occurred. We conclude that the warranty was breached in this instance and that the breach materially contributed to the loss.

▮▮▮▮ In support of the contention that, as the loss was payable to mortgagees, a breach of the warranty on the part of the assured could not affect the recovery, appellee relies upon section 4931, Revised Civil Statutes of Texas and various decisions construing such clauses. The policy covered the vessel on navigable waters of the United States without as well as within the state of Texas. It was a maritime contract, and therefore governed by the general admiralty law and not by the law of Texas. Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900; Peters v. Veasey, 251 U. S. 121, 40 S. Ct. 65, 64 L. Ed. 180; Union Fish Co. v. Erickson, 248 U. S. 308, 39 S. Ct. 112, 63 L. Ed. 261. The laws of Texas have no application to the case. There is considerable conflict in the decisions on the question of recovery by mortgagees. Undoubtedly the clause may be so drafted as to make the loss payable to an assignee in any event, but such is not the case here. The rule supported by the weight of authority is that where the clause is in simple terms, as appears in the policy in suit, the assignee is merely appointed agent of the insured to receive the money and he is bound by any act of the insured that would forfeit the policy. St. Paul Fire & Marine Co. v. Ruddy (C. C. A.) 299 F.

189, and authorities cited therein. The contention is untenable.

The contention that there was a waiver because of retention of the premium is also without merit. The unearned part of the premium was tendered before the case terminated. It is not suggested that the amount was insufficient. Of course, if the insurer receives the premium with notice of the breach, and the insured is thereby induced to believe that the policy remains in force, a waiver may be predicated upon the retention of the premium. That is not the case presented here, as the premium was no doubt received in the usual course of business and before the loss occurred. The retention of the premium to constitute a waiver must amount to an estoppel. There is nothing shown in this case that would warrant that conclusion. Globe Mutual Life Ins. Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387.

Entertaining the above views, it follows that the judgment appealed from must be reversed, and the case remanded with instructions to dismiss the libel.

Reversed and remanded.