EAGLE STAR & BRITISH DOMINIONS
v. TADLOCK et al.

No. 886–Y.

District Court, S. D. California, Central
Division.

March 5, 1938.

**546**

Lloyd S. Nix, of Los Angeles, Cal., for Garbutt-Walsh.

J. F. DuPaul and Lindley & Higgins, all of San Diego, Cal., for Security Trust & Savings Bank of San Diego.

YANKWICH, District Judge.

The Eagle Star & British Dominions, a British insurance corporation, filed a bill in interpleader, 28 U.S.C.A. § 41(26), and paid into the registry of the court the proceeds of an insurance policy on the fishing boat Yellowtail. The Yellowtail was an oil screw vessel of the burden of eighteen tons with a gross capacity of thirty-two tons, owned by M. G. Tadlock. The policy was for $8,000. The amount actually paid into court was $7,160, the insurance company having deducted the premium on the policy. The amount, from which must be deducted the solicitors' fees and costs allowed to the complainant, is being claimed by the Security Trust & Savings Bank of San Diego, to whom we shall refer as "the bank," and Garbutt-Walsh, a copartnership, consisting of Matt J. Walsh and Frank E. Garbutt, claimants of a maritime lien for repairs and improvements on the boat, to whom we shall refer as "the boatbuilders."

At the time of the loss, the bank had a note and mortgage on the boat, signed by M. G. Tadlock, owner, on which a total of principal and interest of $9,097.-15 was due. The mortgage, although registered, was not a preferred mortgage. 46 U.S.C.A. § 922. It required the owner to keep the Yellowtail insured, at all times, with a "good and responsible insurance company," selected and approved by the bank "for an amount at least equal to the amount which shall, from time to time, remain unpaid upon the said indebtedness and interest thereon" and to keep it renewed and valid at all times.

When the boat was turned over to the boatbuilders, no agreement was made by them with the owner or master that insurance be procured for their benefit, to cover the projected repairs and improvements. The boat was originally covered by a policy of marine insurance in the sum of $7,000, with loss payable to the owner and the bank "as their respective interest may appear." About December 23, 1935, the boat was taken to the boat yard of Garbutt-Walsh at San Pedro, California, by its master. Between that date and January 29, 1936, with his and the owner's knowledge and consent, Garbutt-Walsh furnished material and labor for the repair and improvement of the boat to the value of $4,358.06. On January 29, 1936, the boat left their yard at San Pedro and proceeded to San Diego, its home port. On February 2, it left on a voyage during which, on February 22, 1936, as a result of a gasoline explosion, it burned and sank at sea, a total loss.

While the repairs and improvements were being made on the boat, the boatbuilders asked their insurance broker to secure insurance to cover their claim, the full amount of which was not yet determined. The broker secured a tempo-

rary coverage of $1,800. Later, after many negotiations, a new policy, dated February 5, 1936, for $8,000 was issued, with loss payable to M. G. Tadlock, Security Trust & Savings Bank of San Diego, California, and Garbutt-Walsh "as their respective interest may appear." The policy was delivered to the bank and the old policy for $7,000 was canceled.

The fundamental question involved is this:

Are the boatbuilders entitled to the payment, out of the proceeds, of the full value of the labor and materials furnished to the Yellowtail? They had a maritime lien, having made the repairs and improvements at the behest of the master of the vessel, who was in charge for the owner.

This lien was *not* destroyed by the provision in the bank's mortgage which gave the mortgagee the right to declare default in case the owner permitted the vessel "to be run in debt to an amount exceeding in the aggregate the sum of No dollars." 46 U.S.C.A. §§ 971, 973; The Yankee, 1916, 3 Cir., 233 F. 919; The Luddco 41, 1933, 9 Cir., 66 F.2d 997. It was superior to the mortgage of the bank (Morse Dry Dock Co. v. Northern Star, 1926, 271 U.S. 552, 46 S.Ct. 589, 70 L. Ed. 1082), and gave Garbutt-Walsh an insurable interest in the vessel. See Merchants Mut. Insurance Company v. Baring, 1874, 20 Wall. 159, 87 U.S. 159, 22 L.Ed. 250; Hooper v. Robinson, 1878, 98 U.S. 528, 25 L.Ed. 219; Globe & Rutgers Fire Ins. Co. v. Rose, 1937, 8 Cir., 91 F.2d 635. The owner's insurable interest is not questioned. 38 Corpus Juris 1012; Arnould on Marine Insurance, 11th Ed., 1924, §§ 298, 299.

With the total destruction of the Yellowtail, the maritime lien was lost (38 Corpus Juris 1247; Collins v. Fort Wayne, D.C.1861, 6 Fed.Cas. 119, 122, No. 3012), and the security for it and the mortgage was gone.

The new policy of insurance insured the owner, M. G. Tadlock, Security Trust & Savings Bank of San Diego, and Garbutt-Walsh "as their respective interest may appear" and made "loss, if any, payable to them."

Neither the bank, *mortgagee,* nor Garbutt-Walsh, *lien-claimants,* were designated as such. The boat having been lost, the right to the proceeds of the insurance depends *not* upon the mortgage, but upon the contract of insurance.

The words "as their interest may appear," in insurance policies, have been before the courts repeatedly. They refer to debts owed by the insured. When a mortgagee is so designated, the clause, usually referred to as "the open mortgage clause," means that the insurer will pay the mortgagee "to the extent of his lien or charge upon the premises" at the time of loss. Sias v. Roger Williams Insurance Co., C.C.N.H.1880, 8 F. 187, 188. And see Trustees of Thayer Academy v. Corporation of Royal Exchange Assur. Co., 1932, 281 Mass. 150, 183 N.E. 264, 266; Norwich Union Fire Insurance Soc. v. Citizens' Bldg. & Loan Ass'n, 1928, Tex.Civ.App., 7 S.W.2d 144. The mortgagee stands in the shoes of the insured and becomes his agent to receive the proceeds of the policy. The "interest" of the mortgagee is his interest *not* in the property, but in the *proceeds.* Place v. Norwich & N. Y. Transp. Co., City of Norwich, 1886, 118 U.S. 468, 6 S.Ct. 1150, 30 L.Ed. 134; Reynolds v. London, etc., Ins. Co., 1900, 128 Cal. 16, 60 P. 467, 79 Am.St.Rep. 17; Alexander v. Security First Nat. Bank of Los Angeles, 1936, 7 Cal.2d 718, 62 P.2d 735; Hayward Lumber & Investment Co. v. Lyders, 1934, 139 Cal.App. 517, 34 P.2d 805; Walker v. Queen Insurance Co., 1926, 136 S.C. 144, 134 S.E. 263, 52 A.L.R. 259; 5 Couch on Insurance, 1929, § 1215a. His indemnity is "subject to the risk of every act and neglect of the mortgagor which would avoid the original policy in his hands." Delaware Insurance Co. v. Greer, 1903, 8 Cir., 120 F. 916, 918, 919, 61 L. R.A. 137; See: St. Paul Fire & Marine Ins. Co. v. Ruddy, 1924, 8 Cir., 299 F. 189; Ætna Insurance Co. v. Houston Oil & Transport Co., 1931, 5 Cir., 49 F.2d 121, 1931 A.M.C. 995. When several persons are designated as beneficiaries, and the clause "as their interest may appear" is worded in the subjunctive mood, it postulates their respective interest, *not* at the time the policy of insurance is issued, but "such interest as *by proper proofs* is shown to appear at the time of the loss." Fenton v. Cascade Mutual Fire Ass'n, 1910, 60 Wash. 389, 111 P. 343, 344. And see Atlas Reduction Co. v. New Zealand Ins. Co., 1905, 8 Cir., 138 F. 497, 9 L.R.A., N.S., 433.

548

Even in the case of a sole mortgagee, the clause is intended to provide for the contingency of a reduction in the debt between the date of the policy and the date of the loss. Attleborough Savings Bank v. Security Insurance Co., 1897, 168 Mass. 147, 149, 46 N.E. 390, 60 Am.St.Rep. 373. And where a fund is provided for the benefit of persons holding debts of unequal amount and the amount is insufficient to pay them all, an intention to distribute to each a proportionate amount may be presumed. Weber v. Weber, 1935, 169 Md. 702, 181 A. 670.

The policy of insurance here does not refer to the bank as "mortgagee" or to the boatbuilders as "lien claimant." Nor does it disclose the amount of the claim of either.

So we must resort to extrinsic evidence to determine their interests at the time of the loss.

Had the policy of insurance been issued, in its inception, to the owner, bank and boatbuilders, without any other understanding, it might be argued plausibly that the boatbuilders should share, at least in proportion to the amount of their claim. Weber v. Weber, supra.

The unquestioned evidence shows that the value of the labor and materials furnished to the vessel was $4,538.06. The charges and bills were approved by the master of the vessel, as the work progressed. No serious attempt was made at the trial to question the need for, the repairs and the reasonableness of the charges. *However, it is clear that no one anticipated that the cost would be so high.* This fact is significant. It sheds light on the negotiations which led to covering the prospective claim of the boatbuilders by insurance. We shall not attempt to discuss the testimony in detail.

We are satisfied that there was not, at any time, any understanding that the insurable interest of the boatbuilders should extend to the full amount of their claim, whatever it might be, and that it should have preference over the bank's mortgage. At no time was the bank requested to subordinate or to impair the $7,000 protection it had under the old policy. The insurance was secured, *not through the insurer's agent,* but *through the boatbuilders' broker.* He was requested to secure coverage for $1,800. While

negotiating for this, he secured temporary coverage in that amount. As the value of the boat would not allow such additional insurance, the agent secured $1,000. This was done with the consent of the owner and the bank.

The facts evidence a clear understanding of the parties, acting directly or through their agents, that the insurable interest of the boatbuilders should be limited to the amount of additional insurance obtainable. The additional insurance was provided in a new policy of $8,000, which replaced the old policy of $7,000. We cannot agree to the contention of the boatbuilders that *they are not bound by the acts of their broker, if they had the effect of limiting their protection to less than the full value of the repairs and improvements for which they would have a maritime lien.* An insurance broker is the agent of the insured and not of the insurer. The insured is bound by the broker's acts and is charged with his knowledge. He cannot challenge the validity of the contract which the broker makes for him. He may even be bound by his fraudulent acts or representations. *9 Corpus Juris 509, 667, 670; 32 Corpus Juris 1054, 1086;* Hamblet v. City Insurance Co., D.C.Pa.1888, 36 F. 118; Mahon v. Royal Union Mutual Life Insurance Co., 1905, 3 Cir., 134 F. 732; Travelers' Ins. Co. v. Thorne, 1910, 1 Cir., 180 F. 82, 38 L.R.A.,N.S., 626; International Paper Co. v. General Fire Assurance Co., 1920, 2 Cir., 263 F. 363; Hesselberg v. Ætna Life Ins. Co., 1935, 8 Cir., 75 F.2d 490; Strangio v. Consolidated Indemnity & Insurance Co., 1933, 9 Cir., 66 F.2d 330.

It follows that the boatbuilders are bound by the understanding which limited their insurable interest to the increase in the policy.

The amount of the new policy, $8,000, has been depleted by the deduction by the insurer of $840 for premium due. The amount actually deposited in the registry was $7,160. The costs of interpleader and the attorney's fees allowed left the sum of $6,602.12.

We believe this fund should be apportioned to the two claimants according to their respective interests as disclosed by the facts, i. e., seven-eighths to the bank and one-eighth to the boatbuilders, Garbutt-Walsh.

Ordered that Security Trust & Savings Bank of San Diego have judgment on the fund for $5,776.86 and Garbutt-Walsh for $825.26.

 In interpleader, the allowance of costs is governed by the rules of equity and is discretionary. 6 Cyclopedia of Federal Procedure, § 3900; Newton v. Consolidated Gas Company, 1924, 265 U. S. 78, 83, 44 S.Ct. 481, 482, 68 L.Ed. 909; Guardian Life Insurance Co. v. Rosenbaum, 1922, 3 Cir., 280 F. 861; Dobie on Federal Procedure, 1928, § 196. The bank, however, would have us penalize the boatbuilders by assessing all its costs and those of the owner, Tadlock, against them, because they "attempted to collect the amount of their entire claim from this insurance fund."

This refers to the fact that a prior decree for the full amount of the boatbuilders' claim was entered pro confesso on June 12, 1936, after the default of the bank.

That the boatbuilders actually furnished the labor and materials to the full extent of their claim was clearly demonstrated at the hearing had before me after the default and at the present trial. It was not unreasonable for them to believe that, as they had a maritime lien for the full amount, they were entitled to share in the insurance to the full extent of the lien. *This belief was, in fact, strengthened by the position taken by the bank prior to the present trial.* The answers to their cross-bill proffered by the owner and the bank, with the motions to set aside the default, and on which the cause was finally tried, *did not* tender the issue of the existence of an understanding limiting the boatbuilders' insurable interest, *clearly or directly*. They sought to limit the recovery of the boatbuilders to a thousand dollars by reason of an agreement, which the owner alleged in his answer to their cross-bill was "that said materials, supplies, and equipment and said work and labor were furnished and performed at the agreed price of one thousand dollars."

The oral arguments and the briefs on the motion to set aside the default and on the motion for rehearing stressed the priority of the mortgage over the maritime lien and the agreement limiting the contract price.

Even now the bank insists that, because of the priority of its mortgage and of the acceleration clause in it permitting it to declare a default in case the owner ran the boat in debt, the boatbuilders had no maritime lien. Our holding is adverse to this contention.

The court, being thus convinced of the validity of the maritime lien, of its priority over the bank's mortgage, and of the correctness of the amount claimed—a fact *not* disputed even at the trial on the merits—the refusal to set aside the default and judgment pro confesso is traceable directly to the failure of the bank and the owner to advise the court of the contention which is now upheld. As I believe that adversary proceedings should be determined only on the merits, I *would not* have allowed the default and decree pro confesso to stand, had I been apprised of this contention. In view of this, the boat builders should not be penalized.

Neither party will, therefore, recover costs.

Findings and judgment to be prepared by the attorneys for the bank under Rule 44.

Exception to Garbutt-Walsh.