### CONNECTICUT FIRE INS. CO. v. DAVISON CHEMICAL CORPORATION.

No. 2648.

District Court, D. Maryland.

Feb. 15, 1944.

Robert W. Williams (of Ritchie, Janney, Ober & Williams), of Baltimore, Md., for libelant.

Richard F. Cleveland (of Semmes, Bowen & Semmes), of Baltimore, Md., for respondent.

CHESNUT, District Judge.

The only new point in this case is the proper meaning of the phrase "a pro rata monthly premium" as it appears in the "continuation clause" of the American Institute Time Hull Form of Marine Insurance Policy. The whole clause reads as follows:

"Provided, however, should the Vessel at the expiration of this Policy be at sea, or in distress, or at a port of refuge or call, she shall, provided previous notice be given to the Underwriters, be held covered at a pro rata monthly premium to her port of destination."

The particular marine policy was issued by the Connecticut Fire Insurance Company to the Davison Chemical Corporation as owner of the barge "Portsmouth". It covered the barge in the amount of $30,000 at a premium rate of 12% ($3600) for the period of one year from June 10, 1941 at noon, to June 10, 1942 at noon. The barge was valued at $100,000 and was insured to the whole amount in several marine policies.

In the instant case notice was duly given in accordance with the "continuation clause"; the vessel did not arrive at the port of destination until after the stated expiration of the policy as originally written; and the latter was thus extended in time; but the vessel did arrive safely at destination at 6 P. M., June 10, 1942, only 6 hours after noon on that day, the time of expiration of the policy as originally stated. The libelant, the Connecticut Fire Insurance Company, is suing to recover a *monthly* premium of $300 which is one-twelfth of the whole premium for the time policy of one year. It construes "pro rata monthly premium" to mean a *monthly* premium pro rated to the amount of the whole *year* premium stated in the policy. The insured, Davison Chemical Corporation, has refused to make this payment on its contention that the proper meaning of the phrase "pro rata monthly premium" means—a pro rata premium, calculated on a *daily* basis, payable monthly. It therefore says the additional premium must be limited to an amount of about $2.50, being one-fourth of a *day's* premium. Although the "continuation clause" has been in customary use for many years, counsel state that the particular phrase here involved has not heretofore been judicially construed or applied in any reported case.

The facts are not in dispute and appear in the brief pleadings in the case including the interrogatories and answers thereto. The particular marine policy was obtained for the insured by Hutchinson, Rivinus & Co., as its insurance brokers. Their principal office is in Philadelphia, but their representative obtained the policy from the managers of the insurer (Carpenter & Baker) in New York City. On June 4, 1942 the insured vessel was at sea and it was not known whether she would arrive at her destination before noon June 10, 1942, when the policy by its terms expired. In accordance with the continuation clause above quoted, the brokers so notified Carpenter & Baker and obtained their approval of an endorsement for the policy reading as follows: "In the event the barge 'Portsmouth' is enroute on date of expiration, i. e., June 10, 1942, E.S.T., she shall be held covered, subject to the full terms and conditions of the above numbered policy, until her safe arrival at port of destination, in consideration of a pro rata monthly pre-

mium as provided for therein." Similar endorsements were obtained from the other insurers on the risk. On June 24, 1942, (and thus after the ship had arrived safely at destination) the brokers prepared and submitted to Carpenter & Baker and obtained their written approval of a further endorsement for the policy reading as follows:

"New York, June 24, 1942

"Endorsement to be attached to and made a part of Policy No. 34025, Connecticut Fire Insurance Company, issued to the Davison Chemical Corporation.

"For and in consideration of an additional premium of $300, being the monthly pro rata of 12% per annum, it is hereby understood and agreed that the above numbered policy is extended, subject to its full terms and conditions, to cover the barge 'Portsmouth' until her safe arrival at Port Sulphur, Louisiana or vicinity on June 10, 1942.

"A.P. $30,000

"Monthly P/R of 12%—$300."

The brokers sent this endorsement to their customer, the insured, together with the insurer's bill for $300 for the additional monthly premium, but the Davison Chemical Corporation declined payment for the reason above stated.

■ There was uncontradicted parol evidence in the case that the phrase "pro rata monthly premium" in the "continuation clause" has a well understood meaning and application in the business of marine insurance as known to and practiced by both underwriters and brokers for insured owners. This meaning is that if the policy is extended by notice given under the continuation clause and the risk as so extended attaches for *any part* of the month after the original expiration date of the policy, the *whole* of a *month's* premium becomes. due and payable, and that the amount of the monthly premium is that proportion of the whole premium which the month bears to the whole time period of the policy, which of course in this case was one-twelfth of the year, that is $300. The evidence was further to the effect that if the vessel did not arrive at destination within the first month after the original expiration date of the policy, but during the second month thereafter, two monthly payments so calculated would become due and payable, and similarly for succeeding months for which the policy was continued. Counsel for the insured objected to this

parol evidence of the customary understanding of the phrase on the ground that while it may have been perfectly well established from the standpoint of the underwriters it was not binding on the insured owners. However, this contention overlooks the fact that the evidence shows that the phrase is well understood in meaning not only by the underwriters but also by brokers acting for the insured owners and in this case there were such brokers acting for the insured who, it appears from the evidence, well understood the phrase to have the meaning and application contended for by the insurer. Eagle Star v. Tadlock, D.C.Cal., 22 F.Supp. 545, 548; 12 C.J. S., Brokers, § 125, at page 323; Vol. 2, Couch Cyc. of Insurance Law, s. 466, p. 1327; Federal Intermediate Credit Bank v. Globe & Rutgers Fire Ins. Co., D.C.Md., 7 F.Supp. 56, 66; Franklin Sugar Ref. Co. v. Egerton, 4 Cir., 288 F. 698, 702; Western Pet. Co. v. Tidal Gas Co., 7 Cir., 284 F. 82; Couch, Vol. 8, § 2185; 25 C.J.S., Customs and Usages, § 23, p. 111; Vol. 5, Wigmore on Evidence, 2nd Ed., § 2464; Richards on Insurance, 4th Ed., § 73.

■ But apart from this parol evidence of the trade understanding of the phrase, I think there can be little difficulty in giving it properly the meaning contended for by the underwriters, when the policy as a whole is considered. In the first place, it is a well understood principle of marine insurance that if the risk once attaches the whole premium as stated in the policy has been earned by the insurer unless the policy otherwise provides. This has been true since the time of Lord Mansfield. Loraine v. Thomlinson, 2 Doug. (K.B.) 585; Richards on Insurance, 4th Ed.1932, p. 850, note; 38 C.J. 1046–1049; Winter, Marine Ins. 2nd Ed. (1929), pp. 175, 176.

This particular policy does have certain conditions under which, even after the risk has attached, there may be a cancellation or termination of the policy before its expiration with a return of a stated proportion of the premium, but these conditions are not applicable to the facts of this case. Thus in the first printed condition of the policy form provision is made that in the event of a sale of the vessel or transfer to other ownership, under certain conditions, the policy is thereby cancelled "with a pro rata *daily* return of net premium" (Italics supplied). Then again another condition of the policy provides that if the vessel is laid up in port for a period of

30 consecutive days, during the policy period, there shall be a proportionate return of premium calculated by days for the period of the lay-up. These particular conditions with respect to the proportionate return on a *daily* basis emphasize the verbal distinction between the word "daily" in the particular conditions, and the word "monthly" in the continuation clause.

Looking at the policy provisions as a whole, it seems reasonably clear that the phrase "pro rata monthly premium" as used in the continuation clause, means an additional premium for a month calculated pro rata to the whole premium for a year, that is one-twelfth of the whole premium—in this case $300. And it also seems reasonably clear, although it is not necessarily involved in this particular case, that the same monthly rate continues from month to month thereafter during the extended period of the policy. It is conceded, of course, that the continuation clause does provide for a *premium* in addition to that stated in the policy for the time originally covered. And as a matter of literal meaning, this additional premium is to be a monthly premium. The only reasonable interpretation of the further modifying words "pro rata" is that this monthly premium is to be calculated on the basis of the proportion of a month to the original time limit of the policy which was one year. The word "premium" is the principal word in the phrase. It is modified by the word "monthly" (not only a month's premium, but monthly) which should be calculated pro rata to the year. It will be noted that the continuation clause occurs in the policy immediately after the time stated for the duration of the policy, which was one year.

The history of the inclusion of this continuation clause in the marine policy is not without interest. It was first used in English marine policies and originated in the following way. By the Stamp Act of Parliament of 1891 [54 & 55 Victoria, c. 39, § 93(a)] it was enacted that marine time policies should not be written for a period exceeding one year. This caused embarrassment to marine underwriters and vessel owners where the vessel was at sea when the policy expired by its terms. To correct this situation it was provided in the English Finance Act of 1901 [1 Edw. VII, c. 9, § 11(1)] that policies on vessels so situated might be extended. Thereupon the continuation clause was adopted in substantially its present form. And the English Marine Insurance Act of 1906 [6 Edw. VII, c. 41, § 25(2)] was to the same effect. See Eldridge on Marine Policies, 2d ed.1924, pp. 270, 284, 285. While there seems to be no statute in the United States relevant to this subject, it is the very customary practice for marine underwriters not to write time policies for more than one year.

That the above is the proper meaning of the disputed phrase has long been well understood in the marine insurance business both in England and the United States for many years. It is so stated in a number of practical books on the subject which the evidence shows are commonly used as manuals or trade guide books. Thus it is said in a book entitled "Marine Insurance" by Gow, 5th ed. London, 1931, at page 238:

"The next clause (No. 5) is the Continuation Clause, which provides that if a vessel is at sea, in distress, or at a port of refuge or call at the expiration of the policy, she shall, provided that previous notice be given to the underwriters, be held covered at a pro rata monthly premium to her port of destination. This clause is, in effect, a supplementary agreement to prolong, in certain circumstances, the insurance on a vessel after the expiry of the period agreed upon and until arrival at destination. It is to be noted that the consideration to be paid is a pro rata monthly premium, and if a vessel is covered under the clause for even a few hours, underwriters are entitled to an additional premium of one-twelfth of the rate for twelve months, while in the event of the continuation being required for more than one month but not exceeding two months, the additional premium would be one-sixth, and so on."

And in "Students Analysis of Insurance Clauses" by Victor Dover, Secretary of the Insurance Institute of London, (5th Rev.Ed.London 1936, p. 261), the author states:

"Continuation Clause. In case difficulty should be experienced in renewing insurance on expiry of the policy by reason of the vessel being at sea, at a point of distress or of call, it is agreed to continue cover if previous notice be given; a twelfth of the annual premium being payable for every additional thirty days or part thereof until the vessel reaches her destination. If notice be not given, the policy lapses on expiry date, and difficulty may be experienced

**6**

in determining whether the loss occurred within the policy period or not."

See also "Reference Book of Marine Insurance Clauses" by Wetherby & Co. London 1925, where the continuation clause is quoted on page 1, and at page 174 it is said in discussing it that "a twelfth of the annual premium being payable for every thirty days or part thereof until the vessel reaches her destination."

■■ The contention of the insured is that the phrase is not of itself a technical term of art which needs definition by the usage and custom of the trade, but is composed of words in common use; which should be applied without help from parol evidence; and attention is also called to the well known rule of construction of insurance contracts in the federal courts, that where the wording of a policy of insurance (prepared generally by the insurer) is ambiguous, it should be interpreted liberally in favor of the insured; but this principle does not apply here where the phrase not only has had a long and well established meaning to underwriters but was similarly understood by marine insurance brokers acting for vessel owners. Marine insurance is such a specialty that the use of brokers by vessel owners is not only very general but almost necessary for the benefit of the insured owners, and in procuring the insurance and dealing with the underwriters the broker is the agent of the vessel owners. See Winter, Marine Ins. supra, p. 371 et seq.; Eagle Star v. Tadlock, D.C.Cal., 22 F.Supp. 545, 548. In this particular case there can be no question that the brokers for the insured so understood it. This is clearly shown by their preparation of the endorsement for the policy dated June 24 (after the vessel had arrived at destination on June 10) and also from a letter of June 11, 1942 to the insured in which they said:

"You have advised us that the barge 'Portsmouth' arrived at Port Sulphur at 6:00 P.M. June 10, 1942. This extended coverage beyond the original expiration time of the insurance and therefore underwriters are entitled to a pro rata monthly premium of the basis of the rate paid for the insurance which expired June 10, 1942, noon. The rate paid on an annual basis was 12%. Therefore one month's premium would be figured at the rate of 1% resulting in an additional premium of $1,-000 under the marine contracts. However, in view of the fact that only a few hours

of coverage was involved beyond expiration, we shall try to prevail upon underwriters to agree to waive additional premium or compromise same; but I cannot, of course, make any committment on this."

(It will be recalled that the whole insurance under the policy was $100,000).

As the phrase "pro rata monthly premium" has such a well understood meaning in the marine insurance business, and particularly as in this case it was so understood by brokers for the insured, and as the phrase itself in the context of the policy as a whole reasonably clearly has the meaning contended for by the libelant (even without extrinsic evidence), I conclude that the insurer is entitled to recover the additional premium sued for in the amount of $300. Counsel may submit appropriate form of decree in due course.