**UNITED ASSOCIATION LOCAL 38
PENSION TRUST FUND, et al.,
Plaintiffs-Appellants,**

v.

**AETNA CASUALTY & SURETY CO., et
al., Defendants-Appellees.**

No. 84–2667.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 16, 1985.

Decided June 3, 1986.

Joseph Alioto, San Francisco, Cal., for plaintiffs-appellants.

Sedgwick, Detert, Moran & Arnold, Cynthia H. Plevin, San Francisco, Cal., Donald Farbstein, Farbstein & Brown, San Mateo, Cal., for defendants-appellees.

Before NORRIS and REINHARDT, Circuit Judges and GILLIAM,* District Judge.

GILLIAM, District Judge:

This action arises from defendants' refusal to defend and indemnify plaintiffs under an ERISA liability insurance policy in connection with an action by the Depart-

---

* Honorable Earl B. Gilliam, United States District Judge, Southern District of California, sitting by designation.

ment of Labor charging plaintiffs with violations of ERISA.

## I. FACTS

Plaintiffs are trustees of the employees' benefit trust funds of the United Association Local 38 (hereinafter Local 38), a union of plumbers and pipefitters in San Francisco. The funds themselves are also plaintiffs. Defendants are the Aetna Casualty & Surety Company (Aetna) and a wholly owned subsidiary of Aetna, the Standard Fire Insurance Company (Standard), and Huntington T. Block (Block), an insurance brokerage firm which represented Aetna and Standard in their dealings with plaintiffs in this case.

Plaintiffs had an ERISA insurance policy with Aetna, purchased through Block for the years 1975, 1976 and 1977. The claims against which the policy provided protection were claims for breach of fiduciary duty made against the trustees of the Local 38 funds. The policy involved was a "claims-made" policy. A claims-made policy is one which provides coverage only for claims which are made against the insured during the policy period, and not for actions that occur during the effective period of the policy but give rise to a claim only after the policy expires.

Important to this dispute is Clause VII of the ERISA policy for it provided for an exception to coverage only for claims made against the insured during the policy period. Clause VII was a claims-made extension clause and provided as follows:

If, during the policy period hereof, the insured shall first become aware of any wrongful act which may subsequently give rise to a claim against any insured and shall during the policy period hereof give *written* notice to the company of such wrongful acts, then any such claim which is subsequently made against the insured arising out of such wrongful act shall for purposes of this policy be deemed to have been first made against the insured during the policy period. (Emphasis added.)

Under Clause VII plaintiffs were required to send written notice to Aetna informing it of any wrongful acts. In 1977, during the effective period of the policy plaintiffs sought a renewal of their policy with defendants. They filed a renewal application with defendants in 1977 and included a 5500 form. The 5500 form is a detailed return that the Department of Labor requires for benefit plans which shows the placement of the benefit plan's assets. Attached to this 5500 form was an audit for the Local 38 pension trust for the year ending June 30, 1976. Both the audit and the 5500 form provided the information that became the issues in the Department of Labor suit, namely lack of diversification and an improper loan. The audit also stated that the Department of Labor had been auditing the trust fund since 1971 to determine the fund's compliance with applicable federal law. The renewal application, the 5500 form and the audit were all in writing and were sent to the insurance company during the effective period of the policy.

Also important to this dispute is Clause X of the ERISA policy. Clause X was an extension which permitted plaintiffs to obtain an additional twelve months of coverage for certain wrongful acts. Clause X provided:

... at any time prior to termination or cancellation of this policy as an entirety, whether by the Insured or by the Company, the Insured may give to the Company notice that it desires to be insured for an additional period of twelve (12) months after the effective date of termination or cancellation, at an additional premium of 25% of the premium hereunder, for claims made against the Insured during the said twelve (12) month period by reason of a Wrongful Act committed or alleged to have been committed prior to the effective date of termination or cancellation and which would be otherwise insured by this policy, subject to the following provision:

(a) such additional period shall be deemed part of the policy period and not an addition thereto;

(b) such additional period of time shall terminate forthwith on the effective date of any other insurance obtained by the Insured or its successors in business, replacing in whole or in part the insurance afforded by this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

Prior to the policy's termination at the end of 1977 plaintiffs did not give notice to defendants that they wished to invoke Clause X so as to extend their coverage through the year 1978. Aetna through Block advised plaintiffs in a letter that coverage would cease on January 1, 1978. Apparently no defendant ever directed plaintiffs' attention to the fact that Clause X was available to them and the policy expired at the close of 1977.

The Department of Labor made no formal claim against plaintiffs until January of 1979 when it filed suit in federal district court. (The Department of Labor had first informed plaintiffs of the possibility of an action against them in May of 1978.) The district court subsequently entered judgment against the plaintiffs for violations of ERISA.

In 1982, pursuant to the ERISA insurance policy, the plaintiffs sought reimbursement from the defendants for costs expended in defense of the Department of Labor's suit, and indemnification for the judgment rendered against them. Standard refused to reimburse for the defense costs or to indemnify on the ground that the insurance policy had expired on January 1, 1978, six months before the Department of Labor's claim was made.

Plaintiffs filed this action and the district court granted summary judgment for defendants holding that there was no genuine issue as to any material fact.

## II. DISCUSSION

In order to grant a motion for summary judgment there must be no genuine dispute as to any material fact and the moving party must be entitled to judgment as a matter of law. The evidence and inferenc-es that may be drawn from it must be construed in the light most favorable to the party opposing summary judgment. *Beckham v. Safeco Insurance Co. of America*, 691 F.2d 898, 902 (9th Cir.1982). An issue of fact is not material unless it has legal probative force as to a controlling issue. *Western Transportation Co. v. Wilson & Co.*, 682 F.2d 1227, 1232 (7th Cir.1982).

## A. CLAUSE VII

Defendant argues that the renewal application, the 5500 form and the audit were everyday financial data and cannot therefore constitute notice as required under Clause VII. Defendant also asserts that the language of the policy was clear and unambiguous and since the determination of ambiguity was a question of law summary judgment was properly granted.

■ If the interpretation of the language of the contract were the sole issue, the court might be able to resolve the matter on summary judgment for only questions of law would be in controversy. *Beck Park Apartments v. United States Department of Housing*, 695 F.2d 366, 369 (9th Cir.1982). However, this case cannot be so easily resolved, for where the controversy centers not on interpretation of the contract but on whether the terms of the contract were met the case must be submitted to the trier of fact. A determination that the contract was clear and unambiguous can only help the trier of fact to determine whether the terms of the contract were met or not. Whether the renewal application together with the 5500 form and the audit complied with the terms of Clause VII so as to constitute notice is a material issue of fact for it has legal probative force as to a controlling issue of fact. The specific issue here is the meaning or interpretation to be given the material furnished to defendants by plaintiffs. To put it slightly differently, what should the insurance company have understood from the information it was given. Viewed in the light most favorable to plaintiffs, the statements contained in the furnished material at the very least raise a genuine

issue of material fact as to whether they constitute the notice that the contract requires. Therefore, a material issue of fact is in controversy and summary judgment as pertains to Clause VII must be denied.

## B. CLAUSE X

Having held that the dispute under Clause VII requires reversal of the summary judgment order we are not required to reach plaintiffs' claim under Clause X; if upon remand, plaintiffs prevail under Clause VII, the trier of fact need not consider the claim under Clause X. However, if plaintiffs do not prevail under Clause VII, the availability of a claim under Clause X will become important to their case. Therefore, in order to provide guidance to the parties and the district court we will examine the grant of summary judgment in light of that clause.

Plaintiffs argue that Clause X should be found to have been in effect so as to extend coverage to them for the year 1978. If Clause X had so extended coverage, the claim made by the Department of Labor against plaintiffs, of which they were first notified in May of 1978, would most likely have been covered by the policy. Although plaintiffs did not give notice to defendants that they wished to extend coverage under Clause X for the year 1978 they claim entitlement to such an extension by asserting that defendants had a fiduciary duty to notify them of their rights under Clause X.

As regards Aetna and Standard plaintiffs offer no support for their contention that a fiduciary duty existed. Block, however, was plaintiffs' agent, *Lien Ho Hsing Steel Enterprise Co. v. Weihtag,* 738 F.2d 1455, 1460 (9th Cir.1984); *Eagle Star & British Dominions v. Tadlock,* 22 F.Supp. 545, 548 (S.D.Cal.1938), and therefore did owe them a fiduciary duty. Restatement (Second) of Agency § 387 (1958). Deposition testimony indicates that the scope of Block's duty may have included the giving of notice of the availability of Clause X. The trust administrator testified that he relied exclusively on Block to inform him of his rights and liabilities and

various options under the policy. Thus, plaintiffs have offered sufficient evidence to raise a material issue of fact, that is, whether Block violated a fiduciary duty by not informing plaintiffs of their right to an extension of coverage under Clause X. Summary judgment as pertains to Clause X is reversed for defendant Block; however, summary judgment for defendants Aetna and Standard is affirmed.

AFFIRMED in part and REVERSED and REMANDED in part.

NORRIS, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's opinion as it relates to Clause X of the insurance policy. I dissent, however, from the majority's reversal of the summary judgment in favor of the insurer. I agree with the district court that the question whether plaintiffs satisfied the notice requirements of Clause VII of the insurance policy presents no genuine issue of material fact. Fed.R. Civ.P. 56.

Clause VII extends coverage to claims made after the policy expires if, during the policy period, "the insured shall first become aware of any wrongful act which may subsequently give rise to . a claim against any insured and shall during the policy period ... give written notice to the company of such wrongful acts...." The majority holds that the insurer is not entitled to summary judgment because there is a triable issue of fact as to whether the filing of a renewal application during the policy period constituted notice of a wrongful act within the meaning of Clause VII. The renewal application included two attachments, the 5500 form and the audit by Touche Ross & Co..

The critical determination made by the majority is as follows: "Both the audit and the 5500 form provided the information that became the issues in the Department of Labor suit, namely lack of diversification and an improper loan." Majority Opinion at 3. I disagree for a number of reasons.

With respect to diversification, I find nothing in the renewal application or attachments thereto that arguably puts the insurer on notice that the trustees may have failed to satisfy the diversification requirements of ERISA.[1] The majority simply pronounces that the Touche Ross audit and 5500 form "provided the information" without telling us what that information was or where it is contained in the audit or 5500 form. The only evidence cited by the majority is a statement in the audit that in 1971 the Department of Labor selected the trust fund for audit to determine the fund's compliance with applicable federal law. The majority is presumably referring to Note F in the Touche Ross audit, which states in its entirety:

In October 1971, the Trust Fund Administration, together with the U.A. Local 38 Trust Funds, was selected for audit by the U.S. Department of Labor. The purpose of this audit, in the opinion of the attorneys for the above entities, was to determine whether each of the trusts complies with provisions of the Labor Management Reporting and Disclosure Act, the Welfare Pension Disclosure Act, and the Labor Management Relations Act.

In the opinion of the management and of the attorneys for the trust funds (which opinion is subject to a lack of definitive precedents in the area of jointly administered trust funds of this type), no matters have been brought to their attention in connection with this audit that would be expected to result in any material liability to the trust funds. In addition, management and its attorneys believe that if any matters which could significantly affect the trust funds were disclosed as a result of this audit, corrective measures could be timely taken to relieve the trust funds of any material liability.

Note F says nothing about diversification. In fact, Note F nowhere discloses the focus of the Department of Labor's audit. Thus, there is no basis for the majority's summary determination that Note F somehow put the insurer on notice of a "wrongful act" by the trustees in failing to diversify.

The majority also refers to an "improper loan," but fails to tell us what information in the Touche Ross audit or the 5500 form arguably put the insurer on notice that the trustees had made a loan that may have been improper. Note F is strikingly silent about loans, improper or otherwise, just as it is silent about diversification.

I find it remarkable that Note F is the only specific piece of evidence relied upon by the majority in reversing the summary judgment for the insurer. Yet Note F, standing alone, is singularly devoid of probative value on the question whether plaintiffs satisfied the requirement of Clause VII that the insurer be given notice of wrongful acts that may subsequently give rise to a claim of breach of fiduciary duty. Indeed, Note F has so little probative value that the plaintiffs themselves did not cite it in their briefs filed in this appeal.[2]

The real basis for the majority's reversal of the summary judgment is hindsight. The majority reasons simplistically that since the insurer was put on notice by Note F that the Department of Labor was auditing the Pension Fund, and since the audit

---

**1.** ERISA states that fiduciaries must discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries and, *inter alia,*

"(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so...." 29 U.S.C. § 1104(c) (1982).

**2.** Hence, the majority's reliance on Note F is not only unwarranted, it is also unfair. According to Ninth Circuit General Order 4.2, "[i]f a panel determines to decide a case upon the basis of a significant point not raised by the parties in their briefs, it should give serious consideration to requesting additional briefing and oral argument before issuing a disposition predicated upon the particular point." This order protects the integrity of the adversary process by ensuring that each party has a full and fair opportunity to address the relevant issues. And yet, the majority did not permit additional briefing or oral argument on the probative value of the audit, particularly Note F.

later culminated in charges against the trustees for breach of fiduciary duty for making the loan to the Convalescent Fund, the insurer should have divined that the loan was a focus of the audit.

Not only is the majority's reliance on Note F misplaced, but the majority also fails to mention that in the renewal application itself, plaintiffs expressly disclaimed any knowledge of facts that might give rise to a claim. In response to question nine in the renewal application—"Does anyone proposed for this insurance have knowledge of facts which might reasonably be expected to give rise to a claim or suit under the proposed policy?"—plaintiffs checked the "No" box. That is, plaintiffs gave notice to the insurer that they had no knowledge of any facts that might give rise to a claim of breach of fiduciary duty. Yet they now argue that the same renewal application contained information that should have alerted the insurer that such a claim might reasonably be expected.

Another aspect of the majority's approach troubles me: it effectively blots out the distinction between occurrence and claims-made policies. A doctor could send all of his medical records to the insurer, and an attorney could send copies of all his memoranda, and if a claim arose relating to any of the information contained in these documents, under the majority's reasoning, coverage would exist whether or not the documents provided any reasonable basis to expect such a claim. But if an insured can effectively convert a claims-made policy with an extension clause into an occurrence policy simply by submitting a wealth of documentation, insurers will either stop issuing such policies, or will raise the premiums accordingly.

The only beneficiaries of this lamentable result are the plaintiffs in this case. They had every opportunity to present notice to their insurer under Clause VII. They had every opportunity to present evidence of such notice in opposition to the motion for summary judgment. In my view, they did neither.