## AMERICAN MERCHANT MARINE INS. CO. v. MARGARET M. FORD CORPORATION.

(Circuit Court of Appeals, Second Circuit. December 15, 1920.)

No. 64.

1. **Insurance ⬤═646(6)—Insurer has burden of proving vessel was unseaworthy.**

   As between the owner and insurer, the burden of proving that a vessel was unseaworthy when it left port rests upon the insurer.

2. **Insurance ⬤═668(10)—"Seaworthiness" of vessel a jury question.**

   In action to recover insurance on a vessel damaged by storm, testimony by the vessel's captain, its former owner, and the marine surveyor, *held* to make its "seaworthiness" at the time it left port a jury question, since that term is relative, and means capacity to resist the ordinary perils of the sea.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Seaworthy—Seaworthiness.]

3. **Insurance ⬤═378(1)—Knowledge of vessel's unseaworthiness renders insurer liable despite warranty.**

   An insurer, issuing a policy with knowledge of vessel's unseaworthiness, cannot avoid liability by relying upon a warranty of seaworthiness contained in policy.

4. **Insurance ⬤═542(1)—Substantial compliance with proof of loss provision sufficient.**

   The object of proof of loss is to give the insurer information regarding the facts rendering it liable, and a substantial compliance with the terms of a marine policy is sufficient.

5. **Insurance ⬤═542(1)—Proof of loss of vessel sufficient.**

   Where insurer was advised that the vessel had been seriously damaged, a copy of the survey sent, and later formal notice of the vessel's abandonment, *held*, there was a sufficient compliance with the policy's terms as to notification of loss, especially as liability was denied upon the ground of the vessel's unseaworthiness.

6. **Insurance ⬤═559(1)—Further proofs of loss waived by defense of vessel's unseaworthiness.**

   Further proofs of loss were waived, when the insurer denied liability on the ground of the vessel's unseaworthiness.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Margaret M. Ford Corporation against the American Merchant Marine Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Hunt, Hill & Betts, of New York City (George Whitefield Betts, Jr., and E. Rapallo, both of New York City, of counsel), for plaintiff in error.

Burlingham, Veeder, Masten & Fearey, of New York City (Van Vechten Veeder and William Paul Allen, both of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. After the purchase by Capt. Gilbert, in the fall of 1917, the then barge Henry R. Tilton was rebuilt and re-

fitted as a schooner at a cost of $35,000 to $45,000. Originally she was a schooner. On January 12, 1918, she was placed in dry dock where she was generally overhauled, recaulked, and refastened. While in this dry dock, she was purchased by the defendant in error from Capt. Gilbert. In February, 1918, the plaintiff in error issued its policy of $10,000 in part for the $45,000 of insurance obtained by the defendant in error on this vessel. The insurance policy states that the value of the vessel is $50,000.

In the latter part of February, she left the dry dock and sailed light to Norfolk, there to take a cargo for Brazil. She remained at Norfolk several days, and after being loaded with cargo it was discovered that she was leaking. An examination was made by her master, Capt. Gilbert, examining for the owners, and a marine surveyor, who examined for Lloyd's agent and as a representative of an insurance company. It was found that there was a treenail hole about 50 feet from the bow on the starboard side and about 6 inches under the water line when the ship was loaded and about 4 feet above the water line when the vessel was light. There were also some spike holes. The treenail hole was about seven-eighths of an inch to one inch in diameter, and the spike holes about one-quarter of an inch in diameter. The explanation as to this condition is given as follows: It is said that the treenail hole had not been fully plugged by the pine plug which had been placed in it, and that the spike holes were left when the stage, used in repair work, was removed. But the testimony is that these holes were then carefully plugged and the vessel was declared seaworthy by the three who took part in the examination.

On March 9, 1918, she left Norfolk for Brazil. For the first three days out, she encountered a severe storm reaching a maximum of 60 miles per hour off Hatteras, with heavy seas and gales. The testimony is that the storm came from the south, increased to a gale, with mountainous seas. They could not hold sail on her, and she was making so much water, and laboring so heavily, it was deemed advisable to return to Norfolk, and this was done; the ship arriving on the 18th. Thereafter, and on March 25th, a survey of the vessel was made by the same three examiners. It revealed that she had been badly strained. The testimony is that the conditions found were caused by bad weather. Capt. Gilbert testified that the conditions found were caused by bad weather, and the marine surveyor testified that conditions were due to straining of the vessel. Requests were then made to various shipbuilders for bids for repairs. The lowest bid received was for $40,000. One witness testified that it would cost $40,650. On April 12th defendant in error abandoned the vessel to the plaintiff in error, declaring it to be a total loss. Liability is denied on the ground that the vessel was unseaworthy.

The District Judge submitted the question of unseaworthiness of the vessel to the jury as one of fact. It resulted in a verdict for the defendant in error.

[1, 2] It is urged before us that it was error for the trial judge to submit the question of seaworthiness of the vessel to the jury as one of fact; the contention of counsel being that there is no evidence to sup-

port the claim of the defendant in error that she was seaworthy when insured. As between the owner and insurer, the burden of proving that a vessel is unseaworthy rests upon the insurer. Fireman Ins. Co. v. Globe Navi. Co., 236 Fed. 618, 149 C. C. A. 614; Thames Ins. Co. v. Pac. Ins. Co., 223 Fed. 561, 139 C. C. A. 101. There is evidence in the case which required the District Judge to submit the question of seaworthiness to the jury. The testimony of the former owner, the marine surveyor, and Capt. Stone all tend to show that the ship was seaworthy at the time she left Norfolk. Opposed to this was the testimony of the surveyors who examined the vessel, called by the plaintiff in error, some of whom examined her after she returned to Norfolk, and who declared her to be unseaworthy.

We agree with the instruction, given by the District Judge to the jury, that—

"Seaworthiness is a relative term, and it means the capacity of the vessel to resist or overcome the ordinary perils of the sea; that is, such perils that a vessel engaged in that business, and upon such voyages, and at that age, would probably encounter."

It was fairly left for the jury to determine whether the ship was seaworthy to the extent of being competent to weather the ordinary perils of the sea with the cargo she had. Their verdict, if found after a consideration of conflicting evidence, we are not at liberty to disturb. Mc-Lanahan v. Universal Ins. Co., 26 U. S. 170, 7 L. Ed. 98; Troxell v. D. L. & W. R. Co., 227 U. S. 434, 33 Sup. Ct. 274, 57 L. Ed. 586; Napier v. Greenzweig, 256 Fed. 196, 167 C. C. A. 412. The storms which the vessel encountered after she left Norfolk were a sufficient explanation for the condition of the vessel as found upon her return to Norfolk.

[3] There was a warranty of seaworthiness contained in the policy. The trial judge charged the jury that if the insurance company did not rely upon the warranty, but by its own inspection or other means had knowledge that the vessel was unseaworthy, and then issued its insurance policy with such actual knowledge, the plaintiff in error would still be liable. It is claimed this was error. We think that leaving this question to the jury as a question of fact, in view of the testimony in this record, was correct. There is evidence that the plaintiff in error knew the vessel had been transformed from a schooner to a barge. and used for storing fish. She was inspected by the plaintiff in error in December. 1917. She was inspected. and a report made to the plaintiff in error that she was unseaworthy. On January 20. 1918. she was again inspected by the insurance brokers. who reported her unseaworthy. A witness for the plaintiff in error. a clerk who signed the original policy on February 18. 1919. admitted that he knew the vessel was unseaworthy at the time, stating that a report made in December to him by the inspector of the plaintiff in error. had marked upon it "Keep off." When the risk was again offered in February, 1918, the witness testified that there was a report which contradicted the report of the earlier inspection made in December, 1917. This evidence was properly for the jury. If the plaintiff in error knowingly took the risk at a high premium, it should be held to its bargain, and

not be permitted to resort to terms of the policy to overcome the claim. Farmers' Feed Co. v. Insurance Co., 166 Fed. 112, 92 C. C. A. 95.

[4-6] We think the proof of loss is sufficient. The object of proof of loss is to give information to the insurance company as to the facts rendering it liable. A substantial compliance with the terms of the policy is sufficient. Globe & Rutgers Ins. v. Prairie Oil & Gas Co., 248 Fed. 452, 160 C. C. A. 462. On March 23, 1918, the plaintiff in error was advised of the fact that the vessel had been damaged and that extensive repairs were necessary. On March 26, 1918, they were again informed when a copy of a letter addressed to the cargo underwriters was sent to them advising about further loss. A copy of the survey of March 25 and April 9, showing that specifications were sent to them on April 11, and on April 12 formal notice of abandonment of the vessel was sent. Acknowledgment of such a letter was made by the plaintiff in error. All the bids upon the specifications were sent to the plaintiff in error. We think this was sufficient compliance with the terms of the policy as to notification of loss, since it further appears that liability was denied on the ground of unseaworthiness of the vessel by the plaintiff in error. Further proofs of loss were waived after such a position was assumed. Royal Ins. Co. v. Martin, 192 U. S. 149, 24 Sup. Ct. 247, 48 L. Ed. 385.

We find no error, and the judgment is affirmed.