### KING et al. v. ÆTNA INS. CO.
### No. 42.

Circuit Court of Appeals, Second Circuit.

Nov. 9, 1931.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellant.

Weed & Candler, of New York City (Joseph Thurlow Weed and Robert J. Lantry, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above).

The errors of which the appellant chiefly complains relate to the dismissal of the first and second separate defenses. With respect to the sufficiency of the anchors, the testimony was conflicting. The plaintiff's own witness, Young, testified that, if their aggregate weight was only 200 pounds, that would not be enough. He said that the fluke anchor weighed about 150 pounds and the mushroom anchor about 250. But the defendants had witnesses who swore that the latter weighed only 50 or 75 pounds. It is true that Laird, who should know the most about it because he had loaned it to the yacht, gave the weight as 75 pounds; but Former said it was only about 50, and, if his testimony were accepted, the total weight would be but 200 pounds, admittedly too little. The defendant was entitled to have the jury determine to which witness they would give credence. Moreover, the mushroom anchor was merely dropped, and there was some evidence that the common practice is to bury a mushroom anchor in the mud. With the record in this state, the trial court committed error in deciding as a matter of law that the anchoring was such as to satisfy the requirement of seaworthiness. This issue should have been left to the jury. American Merchant Marine Ins. Co. v. Margaret M. Ford Corp., 269 F. 768 (C. C. A. 2).

Error was also committed in deciding the issue raised by the first defense. The evidence shows that the insured contracted on July 25, 1929, to buy the yacht for a price of $2,500, paying $500 down and the balance before taking possession of her the latter part of August. When bought, she was lying at a wharf in Hempstead Harbor, boarded up with winter covering, and had been out of commission for about ten years. On September 6th, O'Connor caused her to be towed from Hempstead Harbor to Lloyd's Harbor for winter anchorage. While she was there, he says that he painted her hull above the water line, cleaned the interior woodwork, and oiled the deck; and the fluke anchor was added to her equipment. Thus it appears that between the purchase of the yacht and the effecting of insurance on September 24, 1929, nothing was done to increase her value to any appreciable extent. The yacht was 140 feet in length, 13 feet 8 inches in beam, with steel frame and wooden planks in her hull. She was trimmed in mahogany, electrically lighted, and driven by two four-cylinder steam engines. She was built prior

to 1910, the exact date not appearing, and it may be assumed from her dimensions and general character that she was originally an expensive vessel. There is, however, no evidence whatever of her value on September 24, 1929, except the purchase price paid for her by the insured two months before. The purchase price is, of course, not conclusive of the value, but it certainly justifies an inference, in the absence of anything to the contrary, that her value was not $40,000 or anything like that figure. In the insurance binder her value was stated to be $40,000. This binder was prepared by one St. John, who represented King and O'Connor in applying to the underwriters for insurance. Because of misrepresentations made by St. John, the defendant neglected (most carelessly, it would seem) to investigate the value of the yacht; but such misrepresentations were not pleaded as a defense to the policy. In addition to the port risk insurance placed with the defendant, St. John placed an additional $10,000 port risk with another insurance company and $5,000 fire risk only with a third company. He attempted to place $15,000 additional fire insurance with the Vessel Agency, but the latter refused the risk because St. John would not say how much King had paid for the boat.

It is a well-recognized rule of marine insurance, which we have recently had occasion to consider in Btesh v. Royal Ins. Co., 49 F.(2d) 720, that the insured is obliged voluntarily to disclose to the insurer all circumstances known to him and unknown to the insurer which materially affect the risk, and that a failure to make such disclosure will vitiate the policy. The authorities were cited in the Btesh Case and need not be here repeated. As there stated the books are somewhat vague as to how far the insured shall be charged at his peril with appreciating the materiality of a fact which he knows and fails to disclose; but that problem does not arise here, for St. John was informed on September 23d by Mr. Billing of the Vessel Agency that he must ascertain what King paid for the boat, and, when St. John reported that King would not say, he was told by Billing that the Vessel Agency would not place the insurance. If this information was material to the Vessel Agency, St. John must have appreciated that it would be equally material to the appellant. Indeed, regardless of St. John's conversation with Billing, we think any reasonable person must know that the fact that the vessel has just been purchased for $2,500 would materially affect the deci-

sion of an underwriter about to issue a $40,-000 valued policy upon her. It is held that concealment of an overvaluation so excessive as to make the risk speculative vitiates the policy. Ionides v. Pender, L. R. 9 Q. B. 531; Thames & Mersey Marine Ins. Co. v. Gunford Ship Co., L. R. [1911] A. C. 529. The valuation of a vessel at sixteen times what she had just cost the insured likewise makes the risk speculative; the insured has less incentive to protect her than he would had he paid a sum some where near commensurate with the stated value.

While ordinarily the materiality of the concealment is a fact for the jury [Muller v. Globe & Rutgers Fire Ins. Co., 246 F. 759 (C. C. A. 2)], the evidence in the case at bar was so clear that we think the court should have held the policy vitiated and have granted a motion to dismiss the complaint. The first separate defense pleaded that the insured purchased the boat for $2,500, that this was her true value, and that such true value was concealed. This would seem a sufficient allegation of concealment of the purchase price, but, if not, it could have been amended to conform to the proof.

For the foregoing errors, the judgment is reversed, and the cause remanded.