BERNARD H. STECKER, Doing Business as B. H. STECKER Co., Respondent, *v.* AMERICAN HOME FIRE ASSURANCE Co., Appellant.

First Department, June 22, 1948.

92

*Alfred B. Nathan* of counsel (*Nathan, Mannheimer, Asche & Winer,* attorneys), for appellant.

*Benjamin L. Tell* of counsel (*Solomon M. Cheser* with him on the brief; *Tell, Cheser, Werner & Breitbart,* attorneys), for respondent.

Dore, J. The issues are whether plaintiff, insured, improperly concealed from defendant, insurer, under a salesmen's floater

policy, his past criminal record; and whether the so-called ordinary or the stricter marine policy rule regarding concealment is applicable.

The insured sues, under a salesmen's floater policy issued by defendant insuring furs against risk of loss up to $25,000, claiming that on September 14, 1946, between St. Louis and Kansas City, Missouri, the furs were feloniously taken from the insured in a " hold-up " by persons unknown to him and the stolen furs were worth $22,664.

Defendant in a fourth defense and a counterclaim claimed the policy was void because plaintiff concealed material facts which, if known, would have caused defendant not to have insured plaintiff. The facts so concealed are that plaintiff was indicted in 1938 in the United States District Court for the Southern District of New York for concealing and conspiring to conceal from a trustee $40,000 of assets in bankruptcy; that in August, 1940, he pleaded guilty to both counts, was sentenced to two years imprisonment, and imprisoned in the United States penitentiary. The counterclaim asks for cancellation of the policy on return of premiums paid.

Plaintiff's reply admits his indictment, plea of guilty, sentence and imprisonment, but denies defendant's lack of knowledge of the facts or their materiality.

On the ground that if the fourth defense and the counterclaim were tried with plaintiff's case the issues would prejudice plaintiff, Special Term ordered a separate trial of such issues without a jury. After such trial, the court directed entry of judgment dismissing on the merits the fourth defense and the counterclaim. Defendant appeals.

The trial court found that defendant had knowledge of plaintiff's criminal record prior to the loss on September 14, 1946. This was based on the court's acceptance of the testimony of one Sokiran, plaintiff's insurance broker, and also on the court's conclusion that certain " additional elements " supported Sokiran's testimony. The court also decided that the policy in suit was governed by the ordinary rule with regard to concealment and not the marine policy rule and that there was no fraudulent concealment warranting avoidance of the policy.

As to concealment, there are two rules applicable: viz., the so-called marine rule and the so-called ordinary rule. Under the marine policy rule applicable to marine insurance, an applicant is required voluntarily to disclose all material facts known to him. Under the ordinary rule applicable to forms of insurance other than marine, the applicant is permitted to remain silent

on matters concerning which he is not questioned except, as stated in *Sebring* v. *Fidelity-Phenix Fire Ins. Co.* (255 N. Y. 382, 387): " If the applicant is aware of the existence of some circumstance which he knows would influence the insurer in acting upon his application, good faith requires him to disclose that circumstance, though unasked."

We think, on the facts disclosed, the trial court erred in holding as a matter of law that the ordinary and not the marine rule was applicable to the policy in suit. Subdivision 20 of section 46 of the Insurance Law, specifying the kinds of insurance authorized, defines so far as here relevant " marine insurance " as meaning insurance against any and all kinds of loss or damage to goods in connection with all risks of transit or transportation.

In *Davis Yarn Co.* v. *Brooklyn Yarn Dye Co.* (293 N. Y. 236, 248) discussing a number of *inland* marine floater policies covering the same goods, the Court of Appeals said: " When it became necessary to cover risks to property while in transit on land those risks were confided to marine companies because it was marine companies as distinguished from fire or life or casualty or surety companies which had theretofore had to do with the carrying of goods and it was natural to enable and permit them to insure goods in transit on land. Hence we have the extensive inland marine business which in large part has nothing to do with carrying by water. It might better be called, as in some phases it now is called, transportation insurance."

With regard to floater policies the court referred to the opinion in *Fairchild* v. *Liverpool & London F. & L. Ins. Co.* (51 N. Y. 65) in which Judge EARL pointed out that floater policies " were created * * * to cover property which could not well be covered under specific insurance because it was changing in quantity or location." (293 N. Y. 236, 251.)

On marine risks the stricter rule concerning concealment is stated as follows by COUCH: " It is incumbent, therefore, upon a party effecting a marine policy, to communicate to the underwriter every material fact or circumstance which he knows, or is bound in the ordinary course of business to know, and which may influence the underwriter in determining whether he will accept the proposal at all, or whether he will underwrite at a higher premium. This is the basis of the contract between them, and any concealment of a fact which ought to have been communicated by the insured at the time of effecting the policy will wholly vitiate the contract." (3 Couch, Cyclopedia of Insurance Law, § 793.) (See, also, Arnould on Marine Insurance [12th ed.], § 575; Richards, on Law of Insurance [4th

ed.], § 79.) The policy here in question is a marine inland floater policy though it has nothing to do with carriage by water. The nature of the transportation of the floater risks involved brings it, in our opinion, within the purpose, intent and rationale of the stricter marine insurance rule. The furs were to be in transportation under the control of the insured in different parts of the United States. The goods changed from time to time in location, quantity and quality, as sales were had and replacement made. Accordingly any inspection was impossible. It was also impossible to contract for specific insurance on any specified known items. Complete reliance on the honesty and integrity of the insured was inherent in the nature of such risk. On such application, it was incumbent on the applicant, without the necessity of specific inquiry by the insurer, to communicate to the underwriter his serious criminal record involving gross moral turpitude in matters clearly material to such risk, which he knew or ought to have known would influence the underwriter in determining whether it would accept the proposal at all. As this was the very basis of the contract, concealment of such facts would wholly vitiate the contract.

*Blair* v. *National Security Ins. Co.* (126 F. 2d 955) is not here controlling. That case held that a floater inland marine policy required application of the ordinary rule on the question of concealment and said that the marine rule is applied to ocean or " wet risks " and not to inland marine risks. But two years after the *Blair* decision our own Court of Appeals in the *Davis Yarn Co.* case (*supra*) expressly held that inland marine insurance was the same as marine or transportation insurance. It did not pass upon any issue of concealment for such issue was not raised in that case; but in expressly holding that *inland* marine insurance was marine or transportation insurance, the court must have impliedly held that rules applicable to marine insurance should be applicable to inland marine insurance.

In *Clarkson* v. *Western Assurance Co.* (33 App. Div. 23) the Fourth Department held that the marine rule was applicable even to a policy of *fire* insurance on a vessel laid up in a harbor many hundred miles distant from the place where the insurance was effected, on the ground that the subject of such insurance was not under the circumstances within the limits of actual inspection by the insurers or their agents, and said: " In accepting an application for insurance under these circumstances the underwriters had a right to assume that the owners or their agent would act in perfect good faith and disclose any and all

facts material to the risk of which they had any knowledge; and it seems to us that they were under precisely the same obligation to do so as they would have been had they been seeking to obtain an insurance of their vessel against the perils of water. It was stated upon the trial, and not disputed, that if this obligation had been fulfilled, and the underwriters informed of the condition the *Northerner* was in, they would probably have refused the risk. Consequently, to have concealed from them its true condition was, in our opinion, almost if not quite equivalent to an actual fraud." (P. 30.)

Under the state of facts here disclosed, the marine rule as to concealment is applicable; and under such rule the policy was void if plaintiff concealed his very serious criminal record.

The finding of the trial court that the insured's agent communicated to the insurer at the time the insurance was procured that the applicant had committed a $40,000 fraud upon his creditors in bankruptcy for which he had been indicted, pleaded guilty and served time in the pentitiary, is in our opinion against the overwhelming weight of the credible evidence.

Plaintiff did not testify. His sole witness on the issue of defendant's claimed knowledge of insured's criminal record was Sokiran, plaintiff's broker. He testified that in December, 1943, on Stecker's application as vice-president of his corporation, Scientific Fur Corporation, to which the first policy was issued in December, 1943, Sokiran, on this the first application, told Harris, employee of Barnes & Co., soliciting agent for defendant, of plaintiff's criminal record. Harris denied this and stated that if he were advised of such record he never would have entertained the application. No specific mention is made in the court's opinion of this claimed December, 1943, talk between Sokiran and Harris about Stecker's record and, therefore, no finding was made on this essential fact (Civ. Prac. Act, § 440). But irrespective of that, notice to a soliciting agent who has no authority to accept insurance or issue policies is not attributable to the company. (*Baer* v. *American Credit-Indemnity Co.,* 116 App. Div. 233 [1st Dept.], affd. 191 N. Y. 540; *Butler* v. *Michigan Mutual Life Insurance Co.,* 184 N. Y. 337; *McCormack* v. *Ins. Co.* 220 N. Y. 447). In the *Butler* case (*supra,* pp. 340–341) the court said: " ' The knowledge or notice must come to an agent who has authority to deal in reference to those matters which the knowledge or notice affects, and whose duty it, therefore, is to communicate it to his principal.' "

In the *McCormack* case (*supra,* p. 457) the court referring to the *Butler* case said: " We held there that false statements made in an application for a policy were not nullified because a soliciting agent had knowledge of the truth. We said that inquiries as to such matters lay beyond the scope of his duties and functions. If he had been authorized ' to effect insurance and issue policies,' a different question would have been before us."

In May, 1944, Sokiran placed directly with Johnson of Jones & Whitlock, manager of defendant company, a new policy insuring B. H. Stecker Co. to May 1945 at a 3% rate. On this policy defendant paid a sum in settlement of two relatively small losses.

On July 5, 1945, Sokiran procured for Stecker another policy on which the premium was increased from 3% to 4% and coverage reduced from 100% to 80%.

In May, 1946, the policy was reissued for one year. This is the policy under which the loss in suit occurred.

Sokiran testified that in June, 1945, before the issuance of the policy in suit, when he asked Johnson for insurance to cover B. H. Stecker Co., Johnson told Sokiran that he declined to renew because Stecker had a criminal record and had served time; that Johnson at that time pointed to a credit report on his desk as he mentioned the criminal record; that he spoke to Siebold, his superior, and showed him that credit report. Stecker thereafter received an 80% policy at 4%, 1% more than he had paid the previous year.

According to plaintiff's testimony, Johnson, who said he had refused to renew the insurance at the same rate and coverage because of the relatively small loss claims, was nevertheless willing to renew for a man with a known criminal record for an additional premium of only 1% and a 20% deductible loss. Johnson stated that the Retail Credit Company's report received on June 20, 1945, was the only one he had ever obtained. This report made no mention whatever of Stecker's record. That is not denied by plaintiff. On cross-examination it was brought out that Johnson sometimes obtained credit reports from Dun & Bradstreet. On the next adjourned date of the trial, plaintiff called a representative of Dun & Bradstreet and offered in evidence two Dun & Bradstreet reports which showed Stecker's criminal record. But plaintiff's counsel conceded that neither of them had been received by defendant prior to the loss and the court so found. This documentary evidence showing that the only report defendant ever received failed to disclose Stecker's record, disproves the testimony that Johnson pointed to a

credit report when he allegedly told Sokiran that Johnson knew of Stecker's record.

Among the so-called " additional elements " on which the trial court relied to support Sokiran's oral testimony was the increase in premium which he said resulted from the disclosure of plaintiff's record and not as defendant claimed because of the comparatively small losses on the prior policy.

But if Sokiran's testimony about revealing at the outset Stecker's record to Harris is accepted, and if Harris as requested told Johnson, then the insurer knew from the very outset about plaintiff's criminal record. Therefore, the increase from 3% to 4% with 80% coverage could not have resulted from disclosure of plaintiff's record when the subsequent policy was issued, as defendant was supposed to have known it from the beginning when it insured at 3% with full coverage for any loss. In cross-examination on this vital issue Sokiran's testimony was wholly an attempt to avoid answering, and afforded no explanation of the inherent inconsistency.

The loss ratio on the first policy was about two and one-half times the premium and, accordingly, was abnormal. Defendant's explanation of the raise in premium was clear, coherent and consistent. Sokiran's explanation was inconsistent and discredited by documentary evidence.

Sokiran said that on two occasions he discussed Stecker's criminal record. He showed by his testimony that both the insured and his agent realized its materiality to the risk. Thus he testified that when he told Harris about Stecker's bankruptcy he knew he would have difficulty in placing the insurance and said to Harris: " It was going to be a tough line to place." Therefore, even if the ordinary rule were applicable, such record was clearly material to the risk, and Stecker was bound to reveal it.

Johnson and Siebold denied any knowledge of Stecker's criminal record before September 14, 1946, and also denied the broker's testimony as to the substance of the June, 1945, conference. Johnson, Siebold and Harris stated that they never would have insured plaintiff if they had known of his criminal record. In the light of the nature of the risk, defendant's testimony is inherently probable and consistent with the surrounding circumstances. The testimony of defendant's witnesses over whelmingly refuted plaintiff's contentions.

The finding that Stecker's criminal record was communicated to the insurer is against the weight of the credible evidence and should be reversed and a contrary finding made. On the

particular facts disclosed the marine insurance rule and not the ordinary rule is applicable.

On appeal from a judgment rendered in an action tried by the court without a jury, the appellate court, unless it affirms, " shall so far as practicable, grant the motion for judgment which the court below ought to have granted " (Civ. Prac. Act, § 584; *Bernardine* v. *City of New York*, 294 N. Y. 361, affg. 268 App. Div. 444, 447–448; *Lamport* v. *Smedley*, 213 N. Y. 82).

The order and judgment appealed from should be reversed, with costs and judgment on the merits directed for defendant on the fourth defense and counterclaim, with costs.

(Peck, P. J. and Cohn, J. dissenting). We think it unnecessary to determine whether the trial court correctly decided that there was a disclosure by the insured to the defendant at the time of the issuance of the policy in question. Though this was a policy of transportation insurance (an inland marine policy), the insured, in the absence of inquiry, was under no obligation to disclose his previous conviction unless such information were requested by the insurer. (*Blair* v. *National Security Ins. Co.,* 126 F. 2d 955.)

The case of *Davis Yarn Co.* v. *Brooklyn Yarn Dye Co.* (293 N. Y. 236), did not present the question of law which is presented here. In that case the question of concealment and the duty imposed upon the insured was nowhere discussed or considered. The marine rule should not be extended to transportation policies. Moreover, there should be no occasion for the kind of controversy we have here, with the attendant difficulties of resolving it. Plaintiff says he made the disclosure and defendant says that he did not. The trial court held that plaintiff made the disclosure and a majority of this court holds that he did not. It would be very easy to avoid any such controversies and difficulties by insurance companies requesting from insureds such information as the companies want and deem material. It would all then be a matter of record and beyond dispute or misunderstanding. It is unnecessary and unfair that insureds should be compelled to guess at what insurance companies or courts may deem to be material and have the burden of assuming the initiative in determining what should be disclosed, as well as the risk of the court determining later, on disputed testimony, whether a disclosure was made.

Accordingly, we dissent and vote to affirm the order dismissing defendant's fourth affirmative defense and the judgment dismissing defendant's counterclaim upon the second

ground stated by the trial court, namely, that there was no concealment by plaintiff as a matter of law.

CALLAHAN and VAN VOORHIS, JJ., concur with DORE, J.; PECK, P. J., and COHN, J., dissent in opinion.

Order and judgment reversed, with costs to the appellant and judgment on the merits directed for defendant-appellant on the fourth defense and counterclaim with costs. Settle order on notice.