624

Kelleher, Hurley & Kohlmeyer and Charles Kohlmeyer, Jr., all of New Orleans, La., for plaintiff.

Chaffe, McCall, Toler & Phillips and John W. Sims, all of New Orleans, La., for defendant.

---

**WHITEMAN v. RHODE ISLAND INS. CO.**
Civil Action No. 2037.

District Court, E. D. Louisiana.
New Orleans Division.

July 9, 1948.

CHRISTENBERRY, District Judge.

This is an action wherein plaintiff seeks a judgment declaring a certain insurance policy to have been in full force and effect on a particular date, and an order reinstating the policy upon plaintiff's paying to the defendant the necessary premiums therefor.

Plaintiff, on March 19, 1947, owned the tug MAUD WILMOT, and on that date procured from defendant its hull insurance policy No. HO 12034, in the sum of $42,-

500, on the tug. The policy of insurance was issued for a period of one year, and the premium therefor was paid by the plaintiff.

By written agreement dated April 5, 1947, it was agreed between plaintiff and one Robert H. Beattie, that on or before April 15, 1947, plaintiff would sell, and Beattie would purchase, the tug MAUD WILMOT free of all liens and encumbrances, for the price of $35,000. Of the purchase price $5,000 was to be paid in cash upon the signing of the act of sale, and the balance was to be paid at the rate of $2,000 per month. Under the terms of the agreement, the purchaser Beattie was granted authority to use the tug, on inland waters, for whatever purposes he desired, with the understanding that he would effect and maintain full marine and P & I insurance. Beattie, availing himself of the right of immediate use, with plaintiff's knowledge and consent, commenced operating the tug on or about April 5, 1947, and in compliance with the terms of his agreement secured a binder of hull insurance covering the tug, effective April 5, 1947. Although it was agreed that formal bill of sale would be executed on or before April 15, 1947, the record discloses that this did not occur until May 6, 1947, the delay apparently having been caused by the fact that C. I. T. Corporation held a mortgage on the tug.

On or about April 28, 1947, while the tug was in the possession of and being operated by the purchaser Beattie, it ran aground at or near Mile Post 709, in the Mississippi River, and sustained considerable damage. The defendant was notified of the grounding, and appointed surveyors to investigate into the matter.

In a memorandum of agreement entered into between plaintiff and Beattie simultaneously with the transfer of title to the tug on May 6, 1947, cognizance was taken of the damage sustained by the tug in its grounding, and it was agreed that the cost of the repairs which was then unknown would, when ascertained, be advanced by Beattie. Whiteman, on his part, agreed to execute a loan agreement for the amount so advanced, and did, on the same date, execute a loan agreement in blank, which was escrowed. Under the terms of the loan agreement, the loan was to be repayable only to the extent of any net recovery which Whiteman might make from Rhode Island Insurance Company, the defendant herein, under Policy No. HO 12034, the policy at issue here, and another policy or from any other person or persons on account of the damage to the tug. As security for repayment, Whiteman pledged the recovery and agreed to make and press claim against Rhode Island Insurance Company, defendant herein, bringing suit if necessary against the Insurance Company, or any other person or persons, at the expense and under the exclusive direction and control of Beattie, his assignees or agents.

Notwithstanding the agreement between the plaintiff Whiteman and Beattie, an employee of the plaintiff, one Peer, by letter dated June 7, 1947, notified Albert J. De-Wolfe, a representative of Hartwig Moss Insurance Agency, Ltd., through which agency the policy of insurance had originally been obtained by the plaintiff, to cancel the policy retroactively to April 15, 1947. In his letter, Peer indicatd that the cancellation was in accordance with the personal instructions of the plaintiff.

Acting on Peer's letter, DeWolfe secured the cancellation of the policy, and a refund of the unearned premium was made to plaintiff, and accepted by him.

The plaintiff contends that the cancellation was effected by his employee through error and inadvertence; that the defendant's employee, in cancelling the policy, was in the mistaken belief that title to the tug had been transferred in accordance with the agreement of sale referred to heretofore; that the defendant knew of the grounding and resulting damage, and owed the duty to plaintiff to call that fact to his attention, so that the error could be corrected prior to the cancellation of the policy; and that at the time notice of cancellation was received, defendant had a liability to plaintiff, which could be discharged only by payment under the terms of the policy.

The matter is now before the Court on motion by defendant for summary judgment.

Defendant, as the grounds for its motion, contends that its exhibits show the non-existence of the error or mistake alleged by plaintiff, but that if the Court should find that defendant's exhibits do not so show the existing error or mistake does not entitle plaintiff to reinstatement in effect of the policy; that the policy in question contained the following conditions:

"Notwithstanding any language in this Policy to the effect that it is for the benefit of whom it may concern, or any similar language, it is agreed that if the Assured's interest in the vessel hereby insured shall change during the pendency of this Policy, this Policy shall become null and void from the date of such change of interest, unless such change shall have been assented to in writing by the Underwriters. It is also agreed that any change in the management of the vessel shall render this Policy null and void from the date of such change, unless such change shall have been assented to in writing by the Underwriters.";

and that the condition relating to change of management had not been complied with but had, on the contrary, been breached, and that as a consequence of such breach the policy had been terminated and was null, void and no longer in effect at the time the tug ran aground and was damaged.

It seems very unlikely that the letter of Peer, employee of plaintiff, dated June 7, 1947, notifying defendant to cancel the policy in question, retroactively to April 15, 1947, was written through error and inadvertance. The letter, by its terms, discloses that it was written on instructions of the plaintiff, and it is clear that at the time it was written, the plaintiff was fully aware of the terms of the sale and transfer of the tug MAUD WILMOT, and of the accident in which the tug had been involved. In this connection, it is noteworthy that although the alleged error and inadvertence in cancelling the policy is attributed to the employee of plaintiff, no affidavit of the employee in question was filed by plaintiff. But it is not necessary for the purposes of this case to determine whether the attempt to cancel the policy was made through error and inadvertence.

The policy in clear and unambiguous terms provided that any change in management rendered the policy null and void from the date of such change, unless such change had been assented to in writing by the insurer. A contract of marine insurance must be interpreted in the light of practical, sound common sense. Aetna Ins. Co. v. Houston Oil & Transport Co., 5 Cir., 49 F.2d 121-123, citing Peters v. Warren Ins. Co., 14 Pet. 99, 10 L.Ed. 371. And our courts have defined the word Management, as applied to a vessel, to mean the direction and physical or manual control of such vessel. Dampakibsselskabet Dannebrog v. Signal Oil & Gas Co. of California, 310 U.S. 268, 60 S.Ct. 937, 942, 84 L.Ed. 1197; The Oceana, D.C., 233 F.139, 148.

When, on August 5, 1947, the insured granted to Beattie authority to use the tug for whatever purposes he might desire, and Beattie took over the complete control and direction of the tug, a change was effected in the direction and physical and manual control of the vessel so as to constitute a change in management within the meaning of the change of management clause of the policy.

The next questions which present themselves are whether the insurer assented to the change in management or waived the change of management provision of the policy.

Plaintiff, by affidavit, states that soon after April 5, 1947, he advised Mr. DeWolfe, of Hartwig Moss Insurance Agency, Ltd., of the agreement to sell the tug, and that the tug was then in possession of the prospective purchaser. Plaintiff states further that he asked DeWolfe how the insurance policy could be cancelled, and was told that cancellation could not be effected until C.I.T. Corporation surrendered the policy.

DeWolfe states that he recalls having had a visit from plaintiff; that plaintiff informed him that he, plaintiff, was going to sell the MAUD WILMOT, but that the sale had not been finally consummated and could not be until the mortgage on the tug had been satisfied. DeWolfe was unable to re-

call whether plaintiff told him the vessel had or had not been delivered to the prospective purchaser, but stated that if plaintiff did make reference to the delivery of possession of the tug it was done in a casual manner and without details. DeWolfe further states that he did not consider the information received from plaintiff sufficiently definite for him to make a formal report to the insurer or its general agent, as he would have felt obliged to do as plaintiff's representative.

But assuming ad arguendo that plaintiff made a full disclosure to DeWolfe, which assumption is not supported by the proof, this falls far short of constituting notice to the insurer. Hartwig Moss Insurance Agency, Ltd., was plaintiff's broker and agent. This is established by the proof and is true as a matter of law. Barge Portsmouth, D.C., 54 F.Supp. 2, 1944 A.M. C. 384. Notice to plaintiff's own agent was not notice to the insurer. The record is convincing that the insurer had no notice of the transfer of the vessel prior to the time that the vessel ran aground.

The transfer of the management of the vessel on April 5, 1947, without obtaining the written assent of the insurer, and without notice to the insurer, terminated the policy of insurance and rendered it null and void. The transfer of management clause had as its purpose the giving to the insurer of the right to continue or not the risks assumed by it under the policy. By the failure of the insured to inform the insurer of the change of management, insurer was deprived of this substantial right of election. The defendant did nothing to indicate its waiver of the change of management clause, nor did it induce the plaintiff to do anything in the belief that it had waived the requirement of the clause. The defendant is not estopped from asserting the forfeiture of the policy. The insurer must have knowledge of the facts before it can be expected to do any act amounting to a waiver. See: Fidelity-Phenix Fire Ins. Co. v. Handley, 5 Cir., 296 F. 902, 903. It is true that after the stranding of the tug the insurer had surveyors make an examination of the vessel, but this for the

purpose of securing information pending determination of the question of insurer's liability under the policy. It was merely what any prudent administrator might be expected to do under similar circumstances, and cannot on any reasonable theory be construed as constituting a waiver.

The defendant's motion for summary judgment must be granted, and judgment will be entered accordingly.