**John William HAUSER**

v.

**AMERICAN CENTRAL INSURANCE COMPANY, ST. LOUIS, MISSOURI.**

**Civ. A. No. 9761.**

United States District Court
E. D. Louisiana,
New Orleans Division.

March 11, 1963.

Thomas B. Wheeler, New Orleans, La., and George B. Richard, Marrero, La., for plaintiff.

William S. Stone, New Orleans, La., for defendant.

CHRISTENBERRY, Chief Judge.

The foregoing matter having been tried to the Court without a jury, and having heard evidence and argument of counsel, and having taken time to consider, the Court has made the following findings of fact and conclusions of law:

## FINDINGS OF FACT

### I.

This is a suit by the owner of the wood diesel shrimp trawler CECILE ROSE against American Central Insurance Company, St. Louis, Missouri, on its policy of marine hull insurance No. H–3946, issued July 9, 1959, in the amount of $15,000.00.

### II.

On the morning of August 9, 1959, the CECILE ROSE exploded, burned and sank in Bayou Segnette, Louisiana, while enroute from Westwego to Barataria to attend the blessing of the shrimp fleet. No persons were injured and the vessel's wreckage had a value of $50.00.

### III.

The defendant insurer denied liability for the loss on the grounds that the policy was void because plaintiff deceived it as to the presence in the engine room of a butane stove prohibited by defendant, and alternatively, that the CECILE ROSE, at the time of the explosion, was in violation of the policy's continuing warranty of seaworthiness because the stove was unsafe.

### IV.

The vessel was surveyed for insurance purposes in defendant's behalf by United States Salvage Association, Inc., on April 8, 1958. The association's surveyor found a butane stove in the engine room below the main-deck line and considered its presence hazardous and a violation of requirements of the National Fire Protection Association stated in the Association's Bulletin "Fire Protection Standards for Motor Craft", of record herein. The surveyor furnished plaintiff written recommendations, stating requirements which, if met, would make the vessel insurable, including removal of the stove. Plaintiff agreed to comply, otherwise the insurer's general agent, Godchaux & Mayer, Ltd., neither could nor would have proceeded with computation of rates and the preparation of the hull policy on the vessel, which it issued and signed on May 12, 1958. This policy, the predecessor of the policy in suit, was delivered to plaintiff by Jefferson Insurance Agency, Inc., the broker with which plaintiff dealt.

### V.

At all material times, Jefferson Insurance Agency, Inc., acted for plaintiff, merely placing the insurance with Godchaux & Mayer, Ltd., for a commission. There was no agency agreement and Jefferson Insurance Agency, Inc., had no power to waive or alter any requirements of the insurer or the surveyor.

### VI.

In June and July, 1958, Godchaux & Mayer, Ltd. inquired repeatedly in letters to Jefferson Insurance Agency, Inc., whether plaintiff had complied with the

surveyor's recommendations. Finally, in a letter dated July 9, 1958, it stated that the matter was serious and "we do not feel that we can continue on this risk unless we have the assured's immediate confirmation that they have been complied with". Jefferson Insurance Agency, Inc. advised plaintiff of these inquiries, and he appeared at the office of Jefferson Agency and signed a letter stating: "This is to advise that the recommendations suggested by your surveyor have been carried out." The letter was then mailed to Godchaux & Mayer, Ltd. Plaintiff, a businessman, experienced in marine affairs, admits that when he signed the letter he had not removed the stove and had no intention of doing so.

## VII.

Plaintiff continued to operate the vessel with a butane stove in the engine room, although he replaced the existing stove with another, which he personally installed. He admitted that he had no skill or training in making such installations. The stove he installed, and its fuel fittings, butane tank, and valves, were not in any way certified or marked for marine use. There was no pressure gauge on the tank for use in detecting leaks by indicating pressure drops, nor was there any pressure relief valve. No signs were posted giving instructions for the operation of the stove, although if the main valve on the tank, which was mounted on deck, was closed while the stove was lighted, the stove would go out. It would then be necessary to enter the engine room and shut off the burners, or when the main valve was again turned on, butane would escape into the vessel. No periodic inspections of the equipment were made, and the stove was below the main-deck line. The stove was thus, in substantial particulars, not in compliance with the requirements of the National Fire Protection Association.

## VIII.

The insurance reached the end of the policy year on May 12, 1959. Plaintiff, having laid up the vessel, did not seek to renew the insurance until the first week in July, 1959. The insurance was then renewed by a policy in the same form and on the same terms and conditions, except that the name of a bank was deleted from the loss-payable clause. The records of Godchaux & Mayer, Ltd. and Jefferson Insurance Agency, Inc., indicate that a mere renewal occurred.

## IX.

On July 15 or 16, 1959, plaintiff received the policy in suit, and accordingly was aware that it was in the name of the same insurer which had previously prohibited the use of the butane stove. He made no protest and, on the contrary, proceeded to Jefferson Insurance Agency, Inc. and made payment of $100 and $200 against a total premium of $881.25. No information was ever conveyed to defendant or Godchaux & Mayer, Ltd. to indicate that the stove was still on board.

## X.

Plaintiff admits, and a search of the wreck showed, that the stove was on board at the time of the explosion, which was accompanied by a cloud of white smoke. Marine Surveyor J. C. Long, of United States Salvage Association, investigated the explosion to determine its cause, which he attributed to butane, a product which gives off white smoke in combustion. An explosion of diesel fuel would have produced a black smoke; the vessel's fuel tanks were not ruptured; the small containers of gasoline on board were on deck and were not ruptured; and the bilges had recently been cleaned. This left the butane system, the tank of which had disappeared, as the only remaining causative agency.

## XI.

Notwithstanding the testimony of plaintiff's master and his minor son, that the butane tank had been taken to the store of Jack Valance for refilling prior to the accident, plaintiff and the master, in company with Marine Surveyor Long, made an unsuccessful search of the wreckage for the tank. Certainly they would not have made this search if the

tank had not been on board. Witness Valance did not remember seeing the master or the boy, and had no record of receiving or recharging the tank. Nor is it likely that plaintiff would have failed to obtain a replacement tank.

## XII.

■ The Court finds that the butane tank was on board at the time of the explosion, which, other possibilities being reasonably excluded, was a butane explosion; and that the vessel was unseaworthy, not by reason of the mere presence of the butane stove, but by reason of its unsafe, untested installation. A safer stove such as an alcohol stove could have been installed.

## XIII.

■■ The Court further finds that plaintiff, knowingly and deliberately, deceived the defendant insurer as to the presence of the prohibited stove, and failed, at all material times, to report the true situation. Accordingly, there was no meeting of the minds of the parties when the policy in suit issued, as the insurer believed that the stove had been removed, whereas plaintiff knew otherwise.

## XIV.

Defendant has tendered to the Registry of this Court the sum of $300.00 paid by plaintiff against the premium of $815.25, plus interest at five per cent. from the time of payment.

## CONCLUSIONS OF LAW

### I.

This civil action was duly removed from the 24th Judicial District Court for the Parish of Jefferson. Diversity of citizenship exists, and the amount in dispute exceeds $10,000.00.

### II.

■ Plaintiff was under a duty to advise defendant fully and truthfully as to the continuing presence in the engine room of the prohibited butane stove. His deceit of the insurer wholly prevented the creation of a valid contract and avoided the policy. Firemen's Fund Insurance Company v. Wilburn Boat Company, 300 F.2d 631 (C.A.5, 1962); Stipcich v. Metropolitan Life Insurance Company, 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895 (1928); Sun Mutual Insurance Co. v. Ocean Insurance Company, 107 U.S. 485, 1 S.Ct. 582, 27 L.Ed. 337 (1882); Bella S. S. Co. v. Insurance Co. of North America (The Bella), 290 F. 992, 1923 A.M.C. 769 (D.C.Md.) aff'd. 5 F.2d 570, 1925 A.M.C. 751, 755 (C.A.4); Bitesh v. Royal Ins. Co., Ltd., of Liverpool (The Cauto), 49 F.2d 720, 1931 A.M.C. 1044 (C.A.2); King v. Aetna Insurance Co., 54 F.2d 253, 1931 A.M.C. 1940 (C.A.2); The Pacific Queen, 1962 A.M.C. 574, 596 (W.D.Wash.), aff'd. Pacific Queen Fisheries v. Symes, 307 F.2d 700, 1962 A.M.C. 1845 (C.A.9); Connors Marine Co., Inc. v. British & Foreign Marine Insurance Co., Ltd., 1938 A.M.C. 645 (N.Y.Mun.); Stecker v. American Home Fire Assurance Co., 274 App.Div. 91, 80 N.Y.S.2d 145, 1948 A.M.C. 1379; 2 Arnould, Marine Insurance (14th ed.), Sections 522, 534, 535, 575, 589, 591. Insurance policies "are traditionally contracts *uberrimae fidei* and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option". Stipcich v. Metropolitan Life Insurance Company, supra, 277 U.S. at 316, 48 S. Ct. at 513.

### III.

■ Plaintiff's contention that he advised Jefferson Insurance Agency, Inc., of the presence of the stove, while untrue, would not avail plaintiff, as the broker was his agent, not defendant's. Firemen's Fund Insurance Company v. Wilburn Boat Company, supra; Whiteman v. Rhode Island Ins. Co., 78 F.Supp. 624, 1949 A.M.C. 111, 115 (E.D.La.); Connecticut Fire Ins. Co. v. Davison Chemical Corp. (The Portsmouth), 54 F.Supp. 2, 1944 A.M.C. 384, 391 (D.C.Md.); Eagle Star & British Dominions v. Tadlock, 22 F.Supp. 545, 548 (S.D.Cal. 1938), aff'd. Walsh v. Tadlock (The Yellowtail), 104 F.2d 131, 1939 A.M.C. 1278

(C.A.9); 16 Appleman, Insurance Law and Practice, Section 9145, page 696.

IV.

██ The removal of the butane stove was a condition of the retention of the vessel's insurance coverage. Moreover, this condition was clearly material to the risk insured. Petition of Boat Demand, 160 F.Supp. 833, 1958 A.M.C. 1410 (D.C.Mass.). See also, authorities in Conclusion of Law No. 1, and Metropolitan Life Ins. Co. v. Lodzinski, 122 N.J.Eq. 404, 194 A. 79, 81 (1937); "Every fact which is untruly stated or wrongfully suppressed must be regarded as material, if the knowledge or ignorance of it would naturally and reasonably influence the judgment of the underwriter in making the contract at all, or in estimating the degree of character of the risk, or in fixing the rate of premium."

V.

██ Plaintiff is estopped by his retention of the insurance from complaining of the insurer's requirements. New York Life Insurance Company v. Fletcher, 117 U.S. 519, 534, 6 S.Ct. 837, 29 L.Ed. 934 (1886); Layton v. New York Life Insurance Co., 55 Cal.App. 202, 202 P. 958, 960 (1921).

VI.

Under the circumstances, the butane stove was unseaworthy. Petition of Boat Demand, 160 F.Supp. 833, 1958 A.M.C. 1410 (D.C.Mass.).

VII.

The proximate cause of the explosion was butane, which was shown by the preponderance of the evidence to be the more probable of the competing theories as to the cause The Edmund Fanning, 201 F.2d 281, 1953 A.M.C. 86 (C.A. 2).

VIII.

Defendant is entitled to a final decree dismissing the complaint and cancelling its removal bond, and to its costs. After deduction of defendant's costs, plaintiff is entitled to withdraw the balance of the tender paid by defendant into the Registry of the Court.