433 F.2d 152
 ROCK TRANSPORT PROPERTIES CORPORATION, New York Trap Rock Corporation and Mellon National Bank and Trust Company, Plaintiffs-Appellees,
v.
The HARTFORD FIRE INSURANCE COMPANY, Defendant-Appellant.
 No. 113.
 Docket 34920.
 United States Court of Appeals, Second Circuit.
 Argued October 15, 1970.
 Decided October 27, 1970.
 
 Edward C. Kalaidjian, New York City (Thacher, Proffitt, Prizer, Crawley & Wood, New York City, and Dwight B. Demeritt, Jr., New York City on the brief), for appellees.
 Daniel A. Sullivan, New York City (Bigham Englar Jones & Houston, and Alexander Peltz, New York City on the brief), for appellant.
 Before CLARK, Associate Justice,* and LUMBARD, Chief Judge, and KAUFMAN, Circuit Judge.
 
 CLARK, Justice, Retired:
 
 1
 This appeal tests the validity of a judgment entered against Hartford Fire Insurance Company on two insurance policies issued by it on April 1, 1965, for a one-year period. The judgment awarded damages and interests covering the "constructive total loss" of eleven scows and the partial loss of a twelfth one owned by the Rock Transport Properties Corporation and chartered by the New York Trap Rock Corporation, the insured.
 
 
 2
 New York Trap Rock Corporation was the bareboat charterer and operator of the scows in moving rip rap[1] from its quarry on the Hudson River to Port Jefferson on the north shore of Long Island. The damage was done to the scows as the rip rap was removed from them by cranes at Port Jefferson. The cranes were equipped with digger buckets weighing from 4 to 8 tons each which would pick up the rip rap from the scows and transfer it to trucks. In this operation the buckets would sometimes be dropped on the decks of the scows and would often hit the scows' cargo boxes. At times rip rap weighing from 8 to 14 tons would inadvertently fall from the buckets onto the decks. The resulting damage was not occasioned by a single such accident occurring at a specific time but was rather an accumulation of accidents the consequences of which could not be foreseen. However, the insured had, beginning on May 26, 1965, reported a number of the accidents to Johnson and Higgins, the broker designated by both parties to maintain records of losses, damages and expenses, who in turn had reported them to Hartford. By January 1966 the number of notices of serious damage numbered some sixteen. Surveys of the damage were begun in January[2] and completed prior to April 1, 1966, at all of which both the insured and Hartford were represented. Hartford initially disclaimed liability on the ground that the damage was attributable to ordinary wear and tear. However in its amended answer filed May 8, 1968, it also interposed the defense of untimeliness of notice. At trial the jury found against Hartford on the insurance coverage. It also found that the cost of necessary repairs to restore the scows to sound condition exceeded their insured value, that their salvage value was $247,500 and that the loss to the partially damaged scow was $9278.00. The court then proceeded to answer the three relevant legal questions agreed upon by the parties: (1) Did the insured forfeit the right to recovery on the policies by failing to give timely notice of the accidents? (2) Did the insured forfeit the right to claim a constructive total loss by failing to abandon or at least tender abandonment of the scows? And (3) What rate of return was applicable to the pre-verdict, pre-judgment and post-judgment interest? The distinguished trial judge answered the first two questions in the negative and allowed interest at the same rate allowed by New York law upon a loan or forbearance of any money, goods or things in action. General Obligations Law § 5-501(1) (1968); ¶ 14-a New York State Banking Law. The trial judge also filed a clear and concise opinion on the case, 312 F.Supp. 341 (S.D. N.Y.1970), which we adopt in toto.
 
 
 3
 The opinion as to the first question, however, only discusses the purpose clause of the notice provision of the insurance policies and while we believe its holding correct beyond any question, we wish to add alternative grounds that compel the same conclusion. The provision specifically provides that "notice shall be given to these underwriters as soon as possible so that their own surveyor may attend any survey held to determine the extent of the damage or loss and the cost of repairing the same." As the learned judge points out, the manifest purpose of the parties controls the interpretation of the contract provisions. As he indicates, the contract here, "with rather unusual clarity, expressly states that plaintiffs are required to give defendant notice `as soon as possible' so that defendant `could have his [sic] own surveyor attend any survey held to determine the extent' of the damage." Id. at 346. The notice provision, therefore, must be construed only to require notice sufficient to allow Hartford's surveyor to be represented at all of the damage surveys. The trial judge found that it was undisputed that the insured sent Hartford notices of the accidents prior to the survey of any of the scows, that the latter was represented by a surveyor at the time each survey was conducted on each scow and that all of the scows were jointly surveyed before the insurance policies expired. And he properly concluded that the notice requirement of the policies was therefore fully met.
 
 
 4
 In addition we wish to point out that the insured in a series of notices advised Hartford of specific accidents beginning as early as May 24, 1965. Meetings were held in June and July, 1965, with the brokers at which the recurring accident claims were discussed. While Hartford had no one present from its offices the brokers were the joint representatives for claim purposes. While Hartford took no action on any of these meetings or notices on the ground that none of them individually exceeded $5000.00 in damage, it is admitted that 212 claim letters were filed with it by the insured. These indicate themselves that the losses were heavy and serious. Indeed Hartford conducted surveys on every scow on which damage was reported. At the request of the insured Hartford met with it on January 26, 1966, to discuss the claims. Hartford disclaimed liability after this meeting on the ground of no coverage despite the fact that its right to attend the surveys depended entirely on the continued coverage of the policies and notice of claims thereunder. At no time was there any question raised as to the timeliness of the notices of loss until the amended answer was filed in May, 1968. In a long line of decisions such a course of action raises questions of estoppel and waiver. See Brink v. Hanover Fire Ins. Co., 80 N.Y. 108, 113 (1880); Dobson v. Hartford Fire Ins. Co., 86 App.Div. 115, 83 N.Y.S. 456 (4th Dept. 1903), aff'd, 179 N.Y. 557 (1904); American Merchant Marine Ins. Co. v. Margaret M. Ford Corp., 269 F. 768 (2 Cir. 1920), and Della-Posta v. New York Casualty Co., 276 App.Div. 770, 771, 92 N.Y.S.2d 523 (2d Dept. 1949). Also see Couch on Insurance 2d, § 26: 305. Having accepted, with the insured's cooperation, the surveys and other benefits of the notice provision of the policies, Hartford is estopped to deny the insured's compliance with that provision.
 
 
 5
 Likewise, Hartford specifically disclaimed liability under the policies on the sole ground that the damage to the scows resulted from inevitable wear and tear consequent upon the carriage of rip rap. By electing to so disclaim on the merits Hartford waived the notice requirement of the policy. See John Alt Furniture Co. v. Maryland Casualty Co., 88 F.2d 36, 39 (8 Cir. 1937); Hartford Fire Ins. Co. v. Daniels, 201 F.2d 787, 789 (9 Cir. 1953); Nationwide Life Ins. Co. v. Shands, 355 F.2d 103 (5 Cir. 1966); Appell v. Liberty Mutual Ins. Co., 22 A.D.2d 906, 255 N.Y.S.2d 545 (2d Dept. 1964), aff'd, 17 N.Y.2d 519, 267 N.Y.S.2d 516 (1966).
 
 
 6
 We have nothing to add to the discussion of the other points in the District Court's opinion and the judgment is affirmed.
 
 
 
 Notes:
 
 
 *
 Associate Justice, United States Supreme Court, Retired, sitting by designation
 
 
 [1]
 Rock material which includes crusher run, shovel run and capstone varying from dust to stones ten to fourteen tons in weight
 
 
 [2]
 It was agreed between the insured and Hartford that the later waived surveys in connection with damages up to $5000.00